DELIA M. MOLLER, Appellant, *v.* FRANK C. MOLLER, Respondent.

The uncorroborated evidence of prostitutes and private detectives is insufficient to sustain a charge of adultery in an action for divorce.

Where, however, the testimony of such witnesses is corroborated by proof of facts and circumstances harmonizing therewith, giving such weight and strength to the testimony as to induce belief in its truth, a judgment founded thereon is proper.

A divorce should not be granted without evidence which is, after careful scrutiny, satisfactory and can command the confidence of a careful, prudent and cautious judge.

In actions for divorce, however, courts must take such evidence as the nature of the case permits, circumstantial, direct or positive, and bring to bear upon it the experiences and observations of life, and thus weighing it with prudence and care give effect to its just preponderance.

(Argued June 21, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 18, 1887, which reversed a judgment of divorce in favor of plaintiff, entered upon the report of a referee.

This action was commenced December 14, 1885, by the plaintiff to obtain a divorce from the defendant, her husband, on the ground of adultery. The answer was served February 6, 1886, and the action was referred to a referee on the 29th day of April, 1886, to hear and determine the issues.

The complaint alleges the marriage of the parties in January, 1883; that the defendant committed adultery with some woman, unknown to the plaintiff, at No. 48 West Twenty-sixth street, in the city of New York, on the 13th and 28th days of November, 1885, and that he also committed adultery with a woman, unknown to the plaintiff, at No. 33 East Twenty-seventh street on the 1st day of December, 1885.

The answer denies the allegations of adultery. The trial of the action commenced before the referee on the 15th day of May, 1886, and the plaintiff gave evidence tending to sustain

all the allegations of adultery made in the complaint. The referee made his report on the 6th day of December, 1886, in which he found that the defendant had committed adultery with Lotta Forbes on the 28th day of November, 1885, at No. 48 West Twenty-sixth street, and he made no findings in reference to the other charges of adultery contained in the complaint. Judgment of divorce in accordance with the report, and granting to the plaintiff the custody of the child of the marriage, and costs, were entered at the Special Term. The defendant then appealed to the General Term, which reversed the judgment and ordered a new trial before another referee. The plaintiff then brought this appeal.

*D. C. Briggs* for appellant. In reviewing the determination of a trial court upon questions of fact, an appellate tribunal is not warranted in reversing upon the sole ground that, in its opinion, the trial court should have reached a different conclusion upon the conflicting evidence. (*Baird* v. *Mayor, etc.*, 96 N. Y. 576.) When there is evidence on both sides and the case is balanced, and the mind of the court has been called upon to weigh conflicting statements and inferences and decide upon the credibility of opposing witnesses, much weight must be accorded to the especial adaptation of the trial court to investigate and determine such questions. (*Baird* v. *Mayor, etc.*, 96 N. Y. 576; *Crane* v. *Baudouin*, 55 id. 256; 96 id. 578; *Westerloo* v. *De Witt*, 36 id. 344.)

*Charles A. Wilson* for respondent. In divorce suits the ordinary rules relative to the burden of proof are disregarded, and a divorce will not be granted except where the evidence, although uncontradicted, is of such a character as to satisfy the conscience of the court that the grounds for divorce exist. (*Sullivan* v. *Sullivan*, 41 Super. Ct. 519; *Harding* v. *Harding*, 43 id. 27; *Blatt* v. *Rider*, 47 How. Pr. 90; *Griffin* v. *Griffin*, 23 id. 183; Code, § 1229; *Schroeter* v. *Schroeter*, 23 Hun, 230; *Anonymous*, 3 Abb. N. C. 161; *Ross* v. *Ross*, 31 Hun, 140; *Uhlman* v. *Uhlman*, 17 Abb. N. C. 236; *Pollock*

v. *Pollock*, 71 N. Y. 137; *Conger* v. *Conger*, 82 id. 603.)
The rule that divorces should not be granted on the evidence
alone of private detectives and prostitutes is well established.
(*Banta* v. *Banta*, 3 Edw. Ch. 295; *Turney* v. *Turney*, Id.
566; *Platt* v. *Platt*, 5 Daly, 295; *Ginger* v. *Ginger*, L. R.
[1 P. & D.] 37; *Anonymous*, 5 Robt. 611; Browning on
Marriage and Divorce, 70; Ernst's Law of Marriage, 63;
*Sopwith* v. *Sopwith*, 4 S. & Tr. 246; *Cline* v. *Cline*, 25
The Rep. 181.)

EARL, J. We agree with the learned judges of the General
Term in their low estimate of the value in divorce cases of
the evidence of prostitutes and private detectives. The courts
have come to regard the uncorroborated evidence of such
witnesses as insufficient to break the bonds of matrimony.
(*Sopwith* v. *Sopwith*, 4 Sw. & Tr. 246; *Ginger* v. *Ginger*,
L. R., 1 P. & D. 38; *Banta* v. *Banta*, 3 Edw. Ch. 295;
*Turney* v. *Turney*, 4 id. 566; *Platt* v. *Platt*, 5 Daly, 295;
*Anonymous*, 5 Robt. 611.) The consequences which follow
a judgment of divorce are so serious and momentous that such
a judgment should not be granted without the evidence which
furnishes the basis therefor, is, after very careful scrutiny,
satisfactory and such as can command the confidence of a
careful, prudent and cautious judge. But the illicit amours
of faithless husbands and wives are usually clandestine, and
their wicked paths are hidden from public observation; and
hence courts must not be duped, and they must take such evi-
dence as the nature of the case permits, circumstantial, direct
or positive, and bringing to bear upon it the experiences and
observations of life, and thus weighing it with prudence and
care, give effect to its just preponderance.

Applying these rules we are constrained to differ from the
learned General Term as to the force of the evidence in this
case. All the facts must be grouped around the central figure,
Lotta Forbes, with whom the defendant has been found to
have committed adultery. She is an acknowledged prostitute,
and testified that the defendant committed adultery with her,

besides other times, in the evening of the 28th day of November, 1885, in the third story front-room of No. 48 West Twenty-sixth street, after which he accompanied her to Koster & Bial's place of amusement. It is not needful to criticise her evidence or to call particular attention to any portion thereof. It is sufficient to say that, if uncorroborated, she would be unworthy of credit.

George S. Chase, a private detective, employed on behalf of the plaintiff to watch the conduct and movements of the defendant, testified that in the evening of November twenty-eighth, he saw the defendant enter the house No. 48 ; that he watched from the opposite side of the street, and saw him, soon after entering the house, appear with a woman, whom he identified upon the trial as Lotta Forbes, in the third story front-room when she lit the light and pulled down the window shades ; that he remained there about three-quarters of an hour and then came out of the house and accompanied her to Koster & Bial's. There is much in the character, position and evidence of Chase to discredit him ; and if Lotta Forbes' evidence was corroborated only by his, the case for the plaintiff would still, in our opinion, lack that strength which would justify a judgment in her favor. But there is much corroboration of the evidence of these two witnesses to which we will now call attention. William S. Chase, a brother of the detective, on the twenty-eighth day of November met him near Twenty-sixth street, and at his request went with him to No. 48 and then saw the defendant enter that house, appear in the third story front room with Lotta Forbes, and after remaining there about half an hour leave with her and go to Koster & Bial's, as testified to by the detective. This witness was in no way impeached, and no doubt whatever is cast upon his story, except by the singular coincidence that he met his brother, without any prior appointment, at the particular time when he could be a convenient support to him in the evidence which he was expected to furnish. Alice Brooks, a colored washerwoman, testified that in the latter part of November, 1885, she saw the defendant in the third story front-room

of No. 48, then unquestionably occupied by Lotta Forbes, and that he gave a woman, who was then with him, $3.50 to pay her washing bill, and that she saw his photograph on the mantel-piece in the same room on the next day. It is true that she says that woman's name was Annie De Forest, but the description which she gives of her corresponds with that of Lotta Forbes, and no one by the name of Annie De Forest occupied that room, or was in the house at that time. Alice Jones, who was a servant in No. 48 during the months of October, November and December, 1885, testified that the defendant called there once and inquired at the door for Lotta Forbes. Mrs. Swinyard, who was mistress of the house No. 48, testified, as a witness for the defendant, that Lotta Forbes occupied the front-room in the third story from October 12 to December 12, 1885. The proof is abundant that the house No. 48, if not a house of common prostitution, bore such a strong resemblance to one that the difference was scarcely noticeable. While there may have been some respectable people living in the house, prostitutes were harbored there who plied their vocation in the house with the knowledge of the mistress thereof.

If we should stop here, would not the story of Lotta Forbes be sufficiently corroborated? It is unquestioned that she at the time mentioned occupied the particular room, and that the defendant was a visitor at that house of bad repute. How is it possible that the plaintiff, said to be the daughter of a clergyman, was able to suborn so many witnesses and engage them in a criminal conspiracy to furnish the perjured evidence which would convict the defendant of adultery? It is rare that more evidence can be furnished to establish the charge of adultery. The corroboration gives such strength and weight to the evidence of the prostitute and detective as to induce belief in its truth. But there is still more important corroboration, that which, it seems to us, leaves no reasonable doubt that the referee reached the correct conclusion. Before the action was referred, and before the plaintiff, so far as appears, had any knowledge whatever of Lotta Forbes, the defend-

ant had, by inquiring, found that she was in New Orleans living with a man by the name of Withers, as his mistress, and he addressed her the following letter, underscored as the same now appears.

> "11 AND 12 BUTLER EXCHANGE,
> "PROVIDENCE, *April* 17, 1886.
>
> "DEAR FRIEND LOTTA:
>
> "I have with great difficulty learned, and in fact by accident, your present address. Having done so I have taken my first moment to write you.
>
> "I think, I am sure in fact, that you knew in N. Y. that a separation had taken place between myself and wife. Since leaving N. Y. for Providence, R. I., where I now am, my wife has seen fit to institute a suit for a *divorce* in N. Y., and charges me with *improper* relations with two different women, one at 48 West Twenty-sixth street and one at another place at a later date.
>
> "I have every reason to believe that Mrs. M. is ignorant of any fact which in any manner connects me with you in any relation but a *perfectly proper* one. Still, I think, *she*, knowing of your absence and my *inability* to *testify* in my own behalf, hopes to make it appear that improper and illicit relations did in fact exist between *us* at the Twenty-sixth street house. Of course *you* and *I* know how *false* such a charge is, and I being excluded by law from telling *facts*, am left in this most *damaging* and *unfortunate* condition, with no one to appeal to but to *you*.
>
> "Now, Lotta, I have made this full explanation that you could see and *appreciate* my *situation*.
>
>     *      *      *      *      *      *
>
> "You at once believe me,
>      "Sincerely your friend,
>          "FRANK C. MOLLER,
>          "*Narraganset Hotel, Providence, R. I.*

Much comment upon this letter is unnecessary. Its import and meaning, read between the lines, are too plain for doubt,

and it is no less significant although dictated by his counsel. It discloses great intimacy between him and a prostitute.

How did she know of his separation from his wife except from him? What proper "relation" "connected" him with her? Why was it necessary to inform her that his wife was ignorant of any "improper" relation between them? What reason did he then have for supposing that his wife knew anything about her, and particularly that she knew of her absence and that she hoped to make it appear "that improper and illicit relations did, in fact, exist" between them at No. 48? Why were the suggestive words underscored? Here was a young man, who had been married but little more than three years, separated from his wife, addressing a prostitute, who was then, to his knowledge, the kept mistress of another man, as his "dear friend Lotta," and subscribing himself as sincerely her friend; and who can well deny that the letter does not throw a flood of light upon the other evidence implicating him in illicit intercourse with her? In *Turney* v. *Turney* (4 Edw. Ch. 566), it appeared that the wife, who was seeking a divorce, had some relations with two prostitutes who were witnesses for her. And the learned vice Chancellor said: "If she be a chaste and virtuous woman herself, how does it happen that she is known to the two prostitutes who have been examined as witnesses? This part of the case requires explanation." With how much more force such language could be used with reference to this defendant, whose relations with this prostitute were such as the letter discloses. But this is not all; Lotta Forbes answered the letter as follows:

"DEAR FRIEND.— Have just received your letter and telegram, and am very sorry that your wife has taken measures against you, but trust it will come out all right in the end for your sake. If you really need my help, I will give it willingly, for you know that we have always been good friends, but nothing more, and as no intimate relations have ever existed between us, of course, I can testify to that effect.

"Have been quite ill this spring, and am in debt where I am living; if you will kindly lend me about one hundred and

twenty dollars I will come to Providence at once, otherwise I will not be able to come until some time in May.

"Trusting that I will hear from you at once, I remain,

"Your little friend,

"LOTTA WITHERS."

"Dear friend" forsooth! And they, he and a prostitute, had "always been good friends!" Why should these two protest to each other that there had been no improper relations between them? Is such the language which two persons whose relations had always been innocent, would use to each other?

But this is not all. Immediately after the receipt of this letter one of defendant's counsel remitted by telegraph the money asked, and requested her to come to Newport, Rhode Island; and she came, reaching there on the eighteenth day of May. She went to a hotel, took her meals in her room, and remained there secluded until about the first day of June, when she came to New York, and went to the house No. 48. While in Newport, and while in New York, she was frequently visited by both counsel for defendant, sometimes by one, and sometimes by the other, and once, at least, by both of them and the defendant; and during all this time her expenses were liberally paid, and there was promise of more. During this time the trial was progressing, and she was kept posted as to its progress and the evidence given. The plaintiff rested her case June nineteenth, in ignorance of the whereabouts, and even the existence of Lotta Forbes; the defendant rested his defense July thirteenth without calling her, although he had abundant opportunity to do so; and the plaintiff again resumed her case in rebuttal on the fifteenth and sixteenth days of July, and then the trial was postponed to October twentieth. On the 16th day of July, one of the counsel for the defendant obtained an affidavit from Lotta Forbes, in which she swore that she had known the defendant from about the month of January, 1885; that from that time, down to the

month of December, she saw him casually; that, in November, she saw him not to exceed three times, when he called on professional business at No. 48; that she had never had any improper relations with him, and he had never been alone with her in any room; that his calls upon her were simply accidental; that she saw him in her room where she saw all her friends, there being no public parlor in the house; that the house No. 48 was perfectly respectable, and the occupants thereof were people of excellent moral character, so far as she knew or had heard; that there had never been any relations between her and him, " except such as were proper between a lady and a gentleman," and " that nothing of an immoral or criminal character ever occurred between them;" that she never knew or heard " of any conduct on the part of Frank C. Moller in any manner implicating or connecting him with any woman or women whose moral character was not perfectly irreproachable, and, from what little she knew of him, she believed him to be a man of virtue and integrity." She alleges that this affidavit was obtained from her while she was intoxicated, but this is denied by the counsel of the defendant who obtained it. It is not unlikely that she was perfectly sober when she made it, for down to that time she was evidently ready and willing for some consideration to swear to anything which could aid the defense. This affidavit makes some significant disclosures. How did the casual meetings between her and the defendant come about? Why was he calling upon her in November at her room? What were the relations between them? Why at that time did he need this certificate of character, this testimony to his virtue and integrity from her? And for what purpose was the affidavit obtained? She had, in her letter and in her interviews with his counsel, denied any improper relations with him, and why was it deemed important that she should swear to it in an *ex parte* affidavit. If the affidavit was true, he knew it; and the only place where her oath to the facts could properly aid him was upon the trial as a witness. For some reason he did not see fit to call her as a witness where she could be cross-

examined; and it is a reasonable inference that this affidavit was obtained so that in case she should appear as a witness for the plaintiff, it might be used as it was used for her impeachment. Thus having obtained the affidavit, the defendant discontinued his payments to her, and then, as she says, she made up her mind to tell the truth, and when she was called as a witness for the plaintiff, in October, the affidavit was put in evidence by the defendant to contradict her.

There was much in the management of Lotta Forbes, on behalf of the defendant, during the progress of the trial, to cast suspicion upon his defense; but we need not extend our comments. We are satisfied that the evidence was sufficient, in the language of Lord STOWELL in *Chambers* v. *Chambers* (1 Hagg. Ch. R. 439), to "lead the guarded discretion of a reasonable and just man to the conclusion" that the adultery charged had been committed.

The order of the General Term should, therefore, be reversed and the judgment of the Special Term affirmed, with costs.

All concur.

Order reversed and judgment of Special Term affirmed.