PATTERSON, J.
It is unnecessary to make extended refer ence to the unsavory details of the evidence in this action. It1 was instituted to procure a divorce, and was referred to a referee, who reported that on the 3d day of August, 1893, the defendant committed adultery with a woman known as Frankie Stewart, at Ho. 1007 Sixth avenue, in the city of Hew York, and that during the month of September, 1893,'he committed adultery with another woman, known as Hina Mann, at the same place. The judgment entered upon this report, and now appealed from, must stand or fall by the findings of the referee as to these two periods! of time. All that is really involved in. the action is connected) with a disputed question of dates. The infant plaintiff and the! defendant were married on the 28th day of July, 1893. The marriage was a ceremonial one, but clandestine, and the parties have never lived together or cohabited. The referee found that the first act of infidelity complained of was committed by the defendant within a week after his marriage, and the second within *743 six weeks. We are unable to concur with the referee in his finding respecting the alleged occurrence in August. That the defendant had before that date been a frequenter of the brothel in .Sixth avenue stands uncontradicted ; that he there consorted with prostitutes, he is obliged to admit; that he was acquainted with, •and was the companion at times in that apartment of, the woman named by the referee, is also undeniable; but he has successfully repelled the charge that on the 3d day of August he committed adultery with that woman. The only positive testimony to establish the accusation as to that day comes from the witness Marshall, the sister of the woman (Mrs. Adams) who kept the apartment in which it is alleged the act occurred. She testifies quite distinctly that it was on the 3d day of August, and she fixes the date as being a day or two before the police authorities made a raid upon the premises, which raid was made on the 5th day of August, 1893. She swears that the defendant was in the apartment on the night of the raid, and was in company with his cousin, Cooper •and that she never saw Mott in the apartment except when accompanied by Cooper, and she states that she recollects more positively •that they were present on the 5th than that they were on the 3d of August. The Adams woman, who kept the apartment, does not testify to having seen Mott there on the 3d of August, or about that •date, but only that she heard voices, but did not recognize Mott’s •as one of them. Now, it distinctly appears by testimony which cannot be rejected that Cooper was not in New York on the 3d or 5th of August, but that he was in Chicago, and had gone there -early in July, and did not return until about the end of August; and ■it is also shown that the defendant, Mott, was not in the city of New York oh the 5th of August, but was at Narragansett Pier. He arrived there on the morning of the 5th of August, and his name was inscribed in the hotel register by his father, who testifies to the fact, and that his son did not return’ to the city of New York until the 20th day of August." The father also testified that during all the interval the son was at Narragansett Pier. It is •evident, therefore, that the witness Marshall was mistaken as to the date, and that the intercourse which she says Mott had with the woman named by the referee in his finding new under consideration must have taken place some time prior to August 3, 1893. She probably referred to an occasion when the defendant admitted that he had intercourse with this woman,—an occasion which he ■doubtless intended to say was prior to the marriage, though singularly enough, when narrating the occurrence, he failed to specify ■any date.
When, however, we come to the consideration of the finding respecting the month of September, we must hold that sufficient appeared in evidence to authorize the decision the. referee made concerning the act of adultery charged as having been committed that month with the woman known as Nina Mann. The wit: ness Katherine Richards testifies very distinctly and clearly to the -occurrence having taken place in the latter part of August or the oarly part of September, 1893. It is not denied that Mott at that *744 time was in New York city. The witness testified that Mott, came into the apartment alone ; that Nina Mann was there; that Mott said he did not want Richards; that he did not like- her; that Nina Mann then went in to him; that.Nina Mann and Mott retired together to a bedroom, remained there an hour, and that then Nina Mann came out, and handed Mrs. Adams a bill, which, the latter changed. Nina Mann then went back to the bedroom, and the witness left the two there. The defendant was not specifically interrogated as to these details. He contented himself' with a general denial of the main facts thus testified to, and an-assertion that he was not in the flat between the date of his marriage and the following Thanksgiving Day. It is urged that the testimony of this witness Richards should be disregarded, and that it is insufficient to form the basis of a decree, because it was given by a confessed prostitute; and that, under the rule which obtains respecting the testimony of such discredited witnesses, it should be unavailing, because it lacks corroboration. In Moller v. Moller, 115 N. Y. 466; 26 St. Rep. 207, it is said that the-courts regard the uncorroborated evidence of prostitutes and private detectives as insufficient to break the bonds of matrimony,, but that in divorce cases the courts must take such evidence as the nature of the case permits, circumstantial, direct, or positive; and must bring to bear upon it the tests of observation and experience, in the exercise of good judgment. It is to be weighed! with prudence and care, and effect must be given to its just preponderance. In McCarthy v. McCarthy, 143 N. Y. 235; 62 St. Rep. 184, this rule was substantially reiterated. Wo are therefore compelled to examine the whole proofs before us to ascertain if there is to be found corroboration by facts or circumstances-sufficient to justify the acceptance of what was deposed to by the-witness Richards as a truthful statement of an occurrence bap-'pening at or about the time sworn to by her, and found by the-referee. Of the fact that Mott knew, and was intimate and had. sexual relations with," Nina Mann at some date,—at all events,, before his marriage,—there can be no doubt. In fact, Mott scarcely denies it. At one point in his examination, when he-was asked the direct question, “ Bid you, at any time after your marriage, have intercourse with Nina Mann?” he answered, “ That was before.” He admits that he was a frequenter of the-apartment in Sixth avenue, and that he had illicit intercourse-there with at least two other women. He was known in this apartment by the sobriquet of “Poker Joe." He will go no-further in his testimony as to Nina Mann than to say that he does not remember having had sexual intercourse with this particular-woman. This statement is incredible. And it. is inconsistent with what he said as above quoted, when for a moment he was-off his guard. He undoubtedly remembered whether he had or; had not had intercourse with this woman. His assertion of lack of memory with regard to such a matter can hardly be true, and, if untrue, it discredits him as a witness generally. It is proven-by other witnesses, whose testimony on this particular point is not, to be assailed, and among them by his own cousin, Cooper, that. *745 this Kina Mann was known among the lewd persons of their acquaintance as “ the friend ” of this defendant. Friendship with a prostitute is suggestive of something different from a merely platonic relation. So far, then, as the fact of corroboration of the testimony of Richards as to the acquaintance and relations of the defendant with Kina Mann is concerned, the case does not admit of any reasonable doubt, and we must, therefore, consider the question as to the date.
Were these relations, which existed before the 28th of July, 1893, discontinued then, or was the act which the referee has found to have been committed so committed after the marriage, and after the return of the defendant from Karragansett Pier, which, as stated before, was on the 20th of August, 1893 ? The fixing of the date of the alleged adultery with Kina Mann in August or September certainly rests upon the testimony of this witness Richards. But we find some corroboration of this testimony of Richards in the statement of Frankie Adams,, who kept the-apartment. To be sure, although not a prostitute herself, she was-the proprietress of the brothel,—a little more discreditable occupation, if that were possible, than that pursued by the abandoned women by whose prostitution she profited. But several of the-circumstances to which she deposed were of such a character that they could not have been fabricated by her for the purposes of this case, for when she narrated them they had no apparent bearing upon the issues. She testified that Kina Mann was away from Kew York from the 1st of June until the latter part of August. She also testified that on one occasion after the 5th of August, Mott came into her room alone, and asked her how she-felt. She said she received money from Kina Mann after Mott “would leave the apartment.” She was asked, “When did you receive money from Kina Mann ? ” and she answered, “ That, was between the 5th of August, as near as I can remember, and the 20th of September; before I went to the World’s Fair.” While this is not precisely as Richards put it, still it furnishes-some corroboration of her story with respect to the changing of the bill under the circumstances she testified to, which as the-whole evidence shows, if it occurred at all, must have been between the 20th of August and the 20th of September, as'Mott was. not in Kew York between the 5th and the 20th of August. This circumstance of corroboration is, it is true, from an' impure source but yet of such character that it is not likely to have been conjured up merely for the purpose of supporting the testimony of the Richards woman, who had not yet been called as a witness when Mrs. Adams testified, and whose account of the September occurrence had not yet appeared. And if it had been put forward untruthfully for the purpose of corroboraiion, the two stories would probably have fitted more precisely in matter of detail. It is to be observed that neither of these women had ever had illicit intercourse with Mott, nor does it appear in any way that either of them knew what the other would testify to about the changing of the bill, or the money passing between Kina Mann and Mrs. *746 Adams; and it is improbable that they could have concocted the story between them merely to fix a date or a time in August or September that would fasten a specific charge of adultery upon ¡this defendant.
But this date is also corroborated by a circumstance, the truth •of which is vouched for by the defendant himself. He expressly admits playing poker with the Marshall woman in the flat for a period covering a couple of months. He says: ' 4
“It was on and off within a couple of months. Within a couple ■of months, I should think. Well, may be a week more or a week less. I don’t know exactly. My best recollection is that ■the whole period covered by the time which I played poker at that house, in which Miss Marshall was engaged, would be about a couple of months.”
He admits playing with her, and there is no evidence that he ever played with any one else, except, possibly Adams. The gravity of this admission is apparent when we consider that this couple of months embraced a period long after the defendant’s marriage, and in fact running down to the end of August. The crucial fact on this head is, of course, the date of Marshall’s arrival at the flat. We think the evidence abundantly establishes that this arrival was about the latter part of June. The testimony of Marshall upon this point is quite circumstantial, and this testimony is both natural and probable. Adams at first put it. later, — as late, in fact, as the latter part of July; but afterwards she was taken sick in June, which was undoubtedly the month to which she intended to refer throughout. 'As already observed, these women, when they gave this testimony, could have had no idea of its importance. It was merely incidental relation of what must then have been deemed a minor detail. Its importance resulted later from the defendant’s admission as to the two months during which he was playing poker with Marshall. Marshall says she was connected with the Wilbur Opera Company in the month of June, and that in that month she was playing' with this company in Denver, Colo. She further says that at that time she received a telegraphic dispatch “to come [to Hew York] at once if she'wanted to see her sister alive;” and that accordingly she came on, reaching here in the latter part of June. If the circumstances here narrated were untrue, it could have been shown, for aught that appears, without much difficulty. Certainly there could have been no -difficulty m ascertaining whether the Wilbur Opera Company, was paying in Denver in June, 1893, and whether Marshall was playing with it. The defendant attempted to escape the probative force of these circumstances by placing the arrival of Marshall at1 an earlier date,—back in April or May. In this, however, he ist not corroborated by a single witness, not even by his cousin, •Cooper, whom he claims to have been his constant companion whenever he visited the brothel. It is certainly significant that Cooper was never asked a single question as to this vital cireum.stance. The defendant’s testimony throughout is evasive, unnatural, and most improbable, especially in - hi* pretended want of recollection with regard to intercourse with Hina Mann before his *747 marriage. As to this particular circumstance of the arrival of Marshall, it is vague and unsatisfactory. He testifies that he saw Marshall there as early as the spring of 1893,—April or May; and that he first knew that Adams was taken sick during the months •of April or May. He declared that he stopped going to Adams’ place about the 1st of June. If the latter statement were true, and if he played poker with Marshall there for a couple of months then Adams must have been taken sick, and Marshall must have arrived, in the early part of April. The alternative, “ April or .May,” is altogether too elastic and vague. This alternative statement would be true even though Mott first saw Marshall in the latter part of May. If, therefore, Mott, as he concedes, played poker with Marshall for a couple of months, and if he testified truthfully when he said that he ceased going to Adams’ about the 1st of June, he need not have been so vague as to the date of Adams’ illness and Marshall’s arrival; and that vagueness, under the circumstances, became especially suspicions. He knew that Marshall had been reasonably precise in her statements, and that these statements were crcumstantial, and referred to other events, which admitted of demonstration or refutation. He knew, too, that the date of Marshall’s arrival was placed by both women at a period even subsequent to that when he had sworn that he ceased .going to the flat altogether. Yet he failed to interrogate Cooper upon the subject, failed to verify or disprove the Denver facts, and contented himself with placing Marshall’s arrival in ‘‘April or May.” We thus find corroboration both as to the person with whom the adultery was committed and as to the date, while as to the act itself we have, in addition, the antecedent facts with repect io the defendant’s relations with Hina Mann. It is not a case where the defendant is entitled to claim that with marriage came reformation, and that the presumption is against his having thereafter renewed his former evil associations. He did not turn over a new leaf. Marriage did not prevent his going again to this brothel, for upon his own confession he went there later with two •companions, one of whom (his cousin Cooper) was aware of his marriage; and he then share the social, though not the criminal, intercourse of the occasion. There is, therefore, no inherent improbability in the story of his -having visited the place upon a somewhat earlier occasion.
It is undoubtedly the general rule that marriage operates as an oblivion of all that has previously passed. It did not thus operate here as to the locality, as we have seen. But as to the act, as was held in Weatherley v. Weatherley, 1 Spinks, 193, where the adultery is charged to have taken place with the very same person with whom connection is pleaded before marriage, this circumstance forms a necessary exception to the oblivion rule. As was said by the learned Dr. Lushington in that case :
“ Circumstances which may be proved subsequently to the marriage will have a very different complexion whether they are taken standing alone, without reference to preceding circumstances, or whether they are taken in conjunction with antecedent •criminal connection itself.”
*748 To the same effect is the doctrine laid down in Ciocci v. Ciocci, 26 Eng. Law & Eq. 604; Brooks v. Brooks, 145 Mass. 575, and Van Epps v. Van Epps, 6 Barb. 321. Even upon the trial of indictments for adultery in states where that offense is made by statute a crime, it has been held that, where one act of adultery is proved by a witness whose credibility the defendant attempted to impeach, evidence of prior acts of improper familiarity between the parties is admissible to corroborate the witness. Com. v. Merriam, 14 Pick. 518; Com. v. Lahey, 14 Gray, 91.
The testimony of Donnelly, the private detective, who was first, hired by the plaintiff, but who was in the employ of the defendant at the time of the trial, does not aid the latter. He testifies, it is true, that he followed Mott from the time in August when the latter arrived from Narragansett Pier, and that Mott never, within his observation, went to Adams’ until Thanksgiving Day. He admits, however, that the defendant evaded him on a number of occasions, and the occasion testified to by Richards may well have been one of these. It was at such a time that the defendant was most likely to be discreet, and to use his wits to avoid discovery. Nor do we think the defendant aided his case by procuring affidavits from Adam's and Richards, immediately after the complaint was served upon him, to the effect that he was in the flat on only one occasion after July 28th, and on that occasion did not have intercourse with any of the women. The remarks of EARL, J., in Moller v. Moller, are specially applicable to this branch of the case. He says (pages 474, 475, 115 N. Y. and 26 St. Rep. 207):
“ If the affidavit was true, he knew it, and the only place where her oath to the facts could properly aid him was upon the trial as a witness ; and it is a reasonable inference that this affidavit was-obtained so that, in case she should appear as a witness for the plaintiff, it might be used, as it was used, for her impeachment.”
The only effect of these affidavits, apart from the light which their procurement throws upon the defendant’s sense of guilt, is-to accentuate the necessity for the corroboration of the affiants. As loose women, they already stood in need of corroboration. The utmost that can be said is that they signed and swore to what the defendant and his attorney, Clark, set before them, and that thus the defendant succeeded in his preparations for impeachment. The effect of it all was not to require the court to throw aside, the testimony entirely, but, before crediting it, or giving it an probative value, to call for even greater and closer scrutiny than was already required because of the character of the women. With whatever caution .or doubt or hesitation this testimony may be considered, it is impossible to deny its force, corroborated as it undoubtedly is by circumstances of weight, by the defendant’s own admissions, and by his -failure to introduce testimony which, if it existed, would have neutralized some of the most important of these circumstances.
The judgment should be affirmed, with costs.
BARRETT, RUMSEY, and WILLIAMS. JJ., concur; YAN BRUNT, P. J., concurs in result.