MARY C. JENNINGS, Respondent, v. DAVID F. JENNINGS, Appellant.

St. Louis Court of Appeals, October 23, 1900.

1. **Alimony:** MODIFICATION OF THE ORDER AWARDING IT: MOTION FOR THAT PURPOSE BASED ON ADULTERY. Although a reasonable mind would conclude that respondent had been guilty of adultery, yet, the facts are not such as to prove her wholly unsuited to have for the present charge of her children, rather than their young and inexperienced stepmother: Held, that under the facts of the case, it would not be for the best interest of the children to remove them out of the jurisdiction of the courts of this state, and deprive them of the power to make future orders for their custody, care and maintenance, which would be the result if they were awarded to this plaintiff (their father) who resides at Chicago.

2. **Divorce:** EVIDENCE SUBJECT OF REVIEW. The sufficiency of the evidence to warrant a conviction is always a matter of review by the appellate court, and the same rule prevails in divorce cases, which makes it the duty of the appellate court to make its own deductions from the evidence, independent of the findings of the trial court.

Appeal from the St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*Rassieur & Rassieur* for appellant.

(1) "As this offense (adultery) is one of secrecy, in which both of the parties take precaution to prevent discovery, it is rarely susceptible of proof by direct evidence. The evidence is generally circumstantial, and this is all that is required." 9 Ency. of Law (Divorce), 748; Dunham v. Dunham, 162 Ill. 589; 35 L. R. A. 70-73.   (2) Where the opportunity for the crime and the will to do it are established, guilt will be inferred.   Bishop on Mar., Div. and Sep., sec. 1370; Berckmans v. Berckmans, 16 N. J. Eq. 143.   (3) "Finding persons in such a situation as presumes guilt generally, courts must presume it in all cases attended with those circumstances."   Cadogan v. Cadogan, 2 Hagg. Cons. Rep. 4; Chambers v. Chambers, 1 Hagg. Cons. Rep. 439; Dunham v. Dunham, 162 Ill. 589.   (4) A mother who has been guilty of adultery is an unfit custodian of her minor children. 9 Ency. of Law, 869; Nelson on Div. and Sep., sec. 985; Com. v. Addicks, 2 Serg. & R. (Pa.) 174; Helden v. Helden, 7 Wis. 296.   (5) Concealment of identity and introducing each other as man and wife, necessarily lead to the inference of guilt.   Nelson on Mar. Div. and Sep., secs. 138, 156, 158; Bishop on Mar. Div. and Sep., sec. 1388.   (6) Adultery will be inferred where the parties occupied a room having but one bed.   9 Ency. of Law, 752; Nelson on Mar., Div. and Sep., sec. 153.

*Lubke & Muench* for respondent.

(1) Even if the court were to conclude that Mrs. Jen-

nings had been guilty of improper conduct in this one instance, such a finding would not warrant the granting of this motion. That Mrs. Jennings has regretted the misfortune which placed her in the equivocal position at the Highlands is very apparent, and that she has used her best endeavors since that time to recover therefrom is shown by the close care and attention which she has given the children ever since her return and the reopening of the schools in September. Upon this head 2 Bishop on Mar. and Div., sec. 1198, lays down the rule as follows: "Adulterous Parent.—Repentence and reformation will have great effect; and a single act of adultery, not repeated, and not likely to be, whether by father or mother, has been deemed not necessarily to deprive forever the delinquent of the custody." Where adultery was charged, and the proof showed imprudent conduct of the wife, the court held that this did not deprive her of her right to have the custody of the children. Daily v. Daily (Wright), p. 514. (2) Where a decree was granted to the husabnd for the indignities of the wife, and the court granted the custody of the children to the wife, the supreme court held this order proper. Messenger v. Messenger, 56 Mo. 337. Where a decree was granted to the husband for the misconduct of the wife (indignities and indecencies), and the court awarded the custody of the minor children to her, that order was affirmed as being "well considered and appropriate." Clarkson v. Clarkson, 22 Mo. App. 253. (3) "Good of Children. It is both law and common sense that the superior right goes with the superior interest, so that now, more emphatically than under the circumstances of the other sub-title, the good of the children is the controlling force in directing the custody." Sec. 1195. "Third Person: In exceptional circumstances where the good of the children requires, they will be committed to the custody of a third person, in disregard of the claim of both parents, but in Wisconsin, by the construc-

tion of the statute, this can not be done." 2 Bishop Mar. and Div., sec. 1193; Hopkins v. Hopkins, 39 Wis. 167; Weir v. Marley, 99 Mo. 494.

BLAND, P. J.—On April 7, 1898, Mary C. Jennings, respondent, obtained in the St. Louis Circuit Court a divorce from her then husband, David F. Jennings, on the grounds, as alleged in her petition, that the defendant had been negligent of and indifferent to his duties toward plaintiff and their children, had offered her such indignities as to render her life intolerable, and had in a fit of passion, without cause, severely choked and maltreated her. In reference to alimony the court made the following order: "It is further ordered by the court that plaintiff have the custody of Francis and Carolyn, the minor children of said parties, and that the defendant have leave to visit and see them and to have them in his care at reasonable intervals, subject to the further orders of the court. It is further ordered and adjudged by the court, and so decreed, that plaintiff, until otherwise ordered by the court, be and is hereby awarded alimony of one hundred and twenty-five dollars, payable May 1, 1898, and one hundred dollars per month thereafter payable on the first day of every month thereof, so long as plaintiff shall be caring for said minor children.

"It is further ordered that plaintiff retain as her own absolute property, the furniture and other effects now in the residence No. 5600 Clemens Avenue, she to vacate said house May 1, 1898."

At the October term, 1899, in the same court Mr. Jennings filed his motion to modify the foregoing order, by awarding him the custody of the two minor children named therein and to relieve him of the payment of any alimony to his divorced wife for the future. For grounds of this motion he alleged that Mrs. Jennings had neglected the children and

had kept them out of school, and that she in July and August, 1899, had committed adultery with one J. B. Russell at View Hotel at the Highlands of Navesink in the state of New Jersey. After hearing the evidence offered by both parties on the motion, the court refused to modify its order, and overruled the motion. David F. Jennings appealed.

1. There is some evidence that after obtaining her divorce the respondent was unsettled and changed her children from one school to another and from one place to another too frequently for their good, but it should be remembered in this connection that she was required to give up her home by the decree of divorce, and was thus deprived of a habitation, and her evidence is that much of her moving about was in search of a location for herself and children, and we don't think that the evidence as a whole on this point is such as should subject her to severe animadversion.

2. In Cadogan v. Cadogan, 2 Hagg, Coms. Rep. 4 (decided in 1798), the court commenting on the proof necessary to make out the crime of adultery said: "Finding persons in such a situation as presumes guilt generally, courts must presume it in all cases attended with those circumstances." Similar expressions as to the sufficiency of the evidence to establish the guilt of the accused is found in the text books and the adjudicated cases. Bishop on Marriage and Divorce, sec. 1388; Nelson on Divorce and Separation, secs. 138, 156 and 158; 9 Ency. of Law, 869; Commonwealth v. Addicks, 2 Serg. & R. 174; Helden v. Helden, 7 Wis. 296; Dunham v. Dunham, 162 Ill. 589; Maller v. Maller, 115 N. Y. 466. Where adultery is alleged, as in every other case where a crime is charged, the sufficiency of the evidence to warrant a conviction must be left to the trier of the fact, who is the judge of both the credibility of the witnesses and of the probative force of their testimony. The guilt or innocence of the accused is a question of *fact,* not of law, and the trier of

this question is not bound down by iron clad rules of law in arriving at a conclusion, however incriminating the circumstances of guilt may be, if a reasonable explanation of them is offered consistent with innocence the accused should be acquitted. It is the duty of the trier of the fact to weigh the exculpatory along with the inculpatory facts and circumstances and to arrive at a just conclusion from all the evidence. In a case like this where adultery is the charge the issue of the fact of cohabitation, as is the issue of fact on any other criminal charge, is purely a question of fact to be determined on the weight of the testimony by the trier of the fact, and the evidence is to be considered and weighed as in all other cases; and where the incriminating facts and circumstances can, from the evidence, be reasonably explained on the hypothesis of innocence, it is the duty of the court or jury trying the issue of fact to acquit of the charge. The sufficiency of the evidence to warrant a conviction is always a matter for review by an appellate court, and in a divorce case the probative force of the evidence and the findings of the trial court are both the subjects of review on appeal, and it is the duty of the appellate court to make its own deductions from the evidence; it is not to be controlled by the findings of the trial court. The undisputed facts are, that on a trip to the Republic of Mexico as a nurse to a couple of invalids, who had employed her, respondent met the man known as Russell, a stranger to her, once for one-half hour at a hotel, again on board of a railway train; that afterwards she had some correspondence with him through the mails, and in July, 1899, went to the city of New York to meet him, she says on a proposal of marriage from him. She arrived in New York on July 16th, and on her arrival she was met by Russell, and the two went immediately to the View Hotel at the Highlands of the Navesink, New Jersey. She went into the parlor of the hotel, he to the office, where he registered himself and re-

spondent as J. B. Russell and wife, and they were assigned to room 34 in the hotel containing but one bed.   They staid at the hotel four or five days, when Russell departed, but returned on July 27th and remained one day and night, and again returned on August 2d and remained one day and night. The respondent occupied room No. 34 during her entire sojourn at the hotel, and no other room than this one was assigned to J. B. Russell on any of his visits.   Respondent was known and addressed as Mrs. Russell by the proprietor of the hotel and his wife, and believed by them to be the wife of J. B. Russell.   She at no time corrected this error, until after the appellant arrived on the scene and gave her true name. To her divorced husband and in her testimony she says she did not know that she was registered as the wife of Russell, until two or three days after it was done; that she then became indignant and told Russell to correct the matter and to leave; that he persuaded her it would make a scene to make the correction and so she let the matter pass.   They were not at any time seen together in room 34, but the hotel proprietor testified that he saw Russell in the room on one occasion.   Respondent testified that he was never in her room at any time, that she did not know where he slept.   She also testified that Russell was an assumed name; that his true name was Rosslin, and that he was interested in mining properties in Mexico and elsewhere.   Russell or Rosslin was not produced as a witness, nor was his deposition taken; no excuse was offered for his non-production as a witness, nor the failure to take his deposition.   Respondent could not remember his address, nor did she produce any of his letters to her, although they were in her possession.   These incriminatory facts and circumstances lead a reasonable mind to the conclusion that respondent committed the crime of adultery with Russell at the times and place mentioned in the motion, and her testimony affords no reasonable explanation of the incriminatory facts and cir-

cumstances consistent with innocence.

In Farrar v. Farrar, 75 Iowa 125, and Verson v. Ford, 37 Ark. 27, it was held that where the mother is an adulteress and the father is a proper person to take care of the children, their custody should be awarded to him. Bishop on Marriage and Divorce, sec. 1166, is to the same effect. Is the appellant such a father? His means are ample; he has shown affection for his children, but he has married a young woman without training in the rearing of children and who can not have a deep affection for the children, and he has removed to the city of Chicago, where his business takes him from his home about one-third of his time. One of the children is a female. To award the custody of the children to appellant in his present situation, would be to place them practically under the immediate care and control of the new, young and inexperienced wife, and to deprive them of that tender and loving care which only a mother can give, and remove them beyond the jurisdiction of the circuit court of St. Louis city, whose wards they are. The respondent is a woman of 44 years of age; the mother of two married daughters, one grown up son, has all the affection of a mother for these children, and has shown a mother's solicitude for their care, education and happiness. But for the View Hotel affair her character would be unsullied. The evidence does not show that she is utterly depraved and wholly unsuited to the care of these children. In the absence of such a showing, as was said in the Edwards case, Vol. 3, page 478, Appeal Reporter, we hesitate to remove these children from the jurisdiction of the courts of this state to a foreign jurisdiction, and thus practically oust the jurisdiction of the circuit court over them and deprive it of its guardianship and power to make future orders for their custody, care and maintenance. The safer course for the present is to leave them as they are, trusting that the future conduct of the mother will sustain and bear out the good opin-

ion the circuit court had of her when it awarded her a divorce and the custody of the children in the first instance.   Her age, her previous good character, her family relations, her love for her children, their welfare, are certainly strong incentives to prevent a repetition of the View Hotel affair. Such an occurrence in the future should, and no doubt would, deprive her both of the custody of the children and of the allowance of alimony.   With this warning and appeal to the better instincts of the mother, and because under all the facts and circumstances we believe the welfare of the children demands it, we affirm the judgment of the learned trial judge.   All concur.