ELIZABETH BANCROFT BURCH, Appellant, *v.* THOMAS HAMILTON BURCH, Respondent.

*Decree of divorce — it should be granted only upon clear evidence of the offense charged.*

The consequences which follow a decree of absolute divorce are so great, not only to the parties immediately connected with it, but to others, that such a decree should not be rendered unless the testimony, after the most careful scrutiny, satisfactorily establishes the commission of the offense upon which the judgment depends.

APPEAL by the plaintiff, Elizabeth Bancroft Burch, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 29th day of May, 1902, upon the report of a referee, and also from an order entered in said clerk's office on the 29th day of May, 1902, denying the plaintiff's motion to refer back this action to said referee to take further testimony.

*Charles W. Bacon*, for the appellant.

*Joseph H. Beall*, for the respondent.

McLAUGHLIN, J.:

This action was brought for a separation under a marriage contract, on the ground of cruelty and non-support. The answer denied the material allegations of the complaint and set up a counterclaim alleging adultery on the part of the plaintiff, and praying for an absolute divorce.

The case coming on for trial, the plaintiff offered no evidence and voluntarily submitted to a dismissal of the complaint, and thereupon the defendant introduced evidence to establish the allegations of the counterclaim, which were that the plaintiff between the 4th and 9th days of September, 1900, had committed adultery at the apartment of one Edith Lee with a person whose name was unknown. He produced three witnesses, Edith Lee, Ann Elizabeth West and Joseph W. Fisher, whose testimony, if true, established the plaintiff's infidelity. The referee, as appears from his opinion, concluded that the testimony of the two former should be viewed with suspicion, and in this we agree, but to his conclusion that the latter sufficiently corroborated them to justify the granting of the decree, we cannot agree.

The testimony of the witness Lee, according to her own admissions and the means which she employed to gain a livelihood — taken in connection with her explanation of why she did not go to Maspeth after leaving the plaintiff at Trainor's restaurant; her return to her own apartment the night the adultery is alleged to have been committed just in time to see the alleged co-respondent leave; her subsequent relations with or employment by the defendant, and her manifest interest in his behalf, is entitled to no consideration whatever and is insufficient to justify the dissolution of the marriage contract. Nor is the testimony of the witness West any better. She was a servant in the employ of the witness Lee, and manifestly was completely under her control. She had a " very poor memory," was " near-sighted," and little or no reliance could be placed upon what she said, in view of the fact that she was unable to give any intelligent description of the alleged co-respondent whom she claimed to have seen.

Nor do we think the testimony of the witness Fisher, who testified that he saw the alleged co-respondent leave the Lee apartment on the evening in question, and as he opened the door to come out, saw the plaintiff in the hall scantily attired, when taken in connection with the other facts testified to by him — either standing alone or considered with the testimony of the other two witnesses — sufficient to sustain the conclusion reached by the referee that a divorce ought to be granted. Fisher lived in the Lee apartment. He was told who the plaintiff was by the witness Lee and the day following he was asked by her if he saw the plaintiff and the man leave the hall the night before. He was unable to give any description of the man whom he claims to have seen, the clothing he had on, nor could he even tell whether he was white or colored. In opposition to this testimony the plaintiff positively denied having committed adultery or that she was at the Lee apartment on the occasion referred to, and as to the latter she was corroborated by her maid, who testified that at the time when the adultery is alleged to have occurred the plaintiff was in her room at the Manhattan Hotel in this city.

No suggestion is made that the plaintiff, except upon this one occasion, had conducted herself improperly, either with the alleged co-respondent or any other person, and it will not do to destroy the character of a woman upon such unreliable testimony as this. The consequences which follow a divorce are so great, not only to the parties immediately connected with it, but to others, that judgment ought not to be rendered unless the testimony, after the most careful scrutiny, satisfactorily establishes the commission of the offense upon which the judgment depends. (*Moller* v. *Moller*, 115 N. Y. 466; *Mott* v. *Mott*, 3 App. Div. 532; *Poillon* v. *Poillon*, 78 id. 127.) This certainly cannot be said of the testimony upon which the judgment appealed from depends, and for that reason we think the judgment should be reversed upon the facts, with costs to the appellant to abide the event, and a new trial granted before another referee.

Van Brunt, P. J., Patterson, O'Brien and Laughlin, JJ., concurred.

Judgment reversed on the facts and new trial ordered before another referee, with costs to appellant to abide event.