Hogan, J.
 

 This action was brought by the plaintiff to obtain a decree of absolute divorce. Defendant answered denying the allegations of infidelity charged against her and made recriminatory charges of adultery on the part of the plaintiff, to which a reply was served containing a general denial.
 

 Upon the application of defendant the court, at Special Term, under section 970 of the Code of Civil Procedure made an order stating the issues of the conduct of each party to be submitted to a jury for determination. After trial the verdict of the jury being in favor of the plaintiff, it was followed by the usual interlocutory judgment on the 4th day of May, 1908, and by final judgment on September 10th, 1908, from which an appeal was taken by defendant to the Appellate Division, and the interlocutory judgment reviewed on appeal. The judgment was affirmed by a divided court, and the defendant appeals to this court alleging errors of the trial justice in rulings made on the trial of the action.
 

 By the terms of the order of the Special Term five questions, numbered respectively 6, 7, 8, 9 and -10, alleging acts of adultery on the part of the plaintiff at stated times and places, were directed to he submitted to a jury,
 
 *162
 
 and by a supplemental order two additional questions of like import were ordered to be tried before a jury. Upon the trial the defendant for the purpose of establishing the guilt of the plaintiff on the issues stated in the order produced as a witness one Sherwood, a young man twenty years of age, who was employed at a meagre salary as a clerk in a law office, and was also engaged in work on a theatrical paper. An actress stopping in the city was a guest of one of the leading hotels. The defendant, who was acquainted with the actress, called upon her and told her of the troubles existing between her and the plaintiff. Sherwood was also acquainted with the actress, and went to the hotel to see her, and while there was introduced by the actress to the defendant. In the course of the conversation the witness was asked by the defendant, as well as by the actress, to watch the plaintiff, which he consented to do. He testified that it was his first experience in that character of work, and that no conversation was had about compensation, but that the actress had. done several favors for him, and when asked to do the service he was willing to do the favor for her; that some two or three weeks after that time the alleged co-respondent of the defendant called at the office of Sherwood to see him, and said that he had heard he was helping the defendant, and wanted to know what he had been doing, to which the witness replied he had been helping defendant by watching the plaintiff; but there was no agreement as far as compensation was concerned.
 

 The testimony of the witness Sherwood tended to substantiate the stated issues in the order to be tried before the jury, numbered 6, 7, 8, 9 and 10. At the close of the evidence counsel for plaintiff requested the trial justice to direct the jury to answer in the negative counts above stated. The trial justice said:
 
 “
 
 There is a question in my mind as to whether Sherwood should he regarded as a private detective to the extent that the court should as a
 
 *163
 
 matter of law rule his evidence is insufficient without corroboration. It does not appear that he was paid for his services, or that he is to be paid. It does not appear that he was engaged for this purpose. I am inclined to think however, that puts him in the position of a private detective. If a person undertakes to render services for friendship at the solicitation of a party to a divorce action, I take it he is a private detective for that portion at-least. It is not necessary he should be employed by a detective agency, or from a detective agency, as a detective. If there is any question of fact here, any question as to the credibility of a witness, the jury should pass on it and the court should not. ” Thereupon the trial justice held that as to the sixth, seventh and tenth questions the evidence was insufficient to establish the acts of adultery on the part of the plaintiff, and as to» the eighth and ninth questions said:
 

 “
 
 * * * All depends upon what we are going to regard Sherwood as, as a matter of law. I cannot pass upon the credibility of his evidence. That is for the jury, provided the evidence is sufficient to go to them.
 

 “I
 
 am of -the opinion that he was engaged as and acting as a private detective for the purpose of getting evidence against -the plaintiff in this case, for the purpose of enabling the defendant to defend this action; that he was employed in that business over a considerable period of time, and that evidence must require corroboration.
 

 ‘1 Sitting as a court hearing evidence in defaults, I would not grant a divorce upon the evidence that was given by Sherwood uncorroborated. Of course that is not the question here. But I do find that as a matter of law that Sherwood was a private detective for all intents and purposes, and that his evidence as to the 8th and 9th being uncorroborated, the jury must answer those questions in the negative.”
 

 The court thereupon so instructed the jury, and also
 
 *164
 
 instructed the jury to answer the two questions in the supplemental order as to the adultery of the plaintiff in the negative, to all of which directions exceptions were taken.
 

 After the ruling by the trial justice the only remaining question to be determined by the jury was the guilt or innocence of the defendant of the acts of adultery charged against her.
 

 • The trial justice in his charge to the jury submitted but one question, viz., the guilt or innocence of the defendant on the 10th day of August, 1907, of an act of adultery with the co-respondent at a hotel in Ganada.
 

 ■ The jury was instructed that the plaintiff was required ■ to' establish by a fair preponderance of evidence,
 
 first,
 
 that the defendant and co-respondent had the lascivious desire or disposition;
 
 second,
 
 that they had the opportunity to gratify that desire or disposition, and,
 
 third,
 
 that they did gratify that desire or disposition.
 

 • In the questions originally framed for submission to the jury was a charge against the defendant of an act of infidelity on the 5th day of June, 1907. With reference to that charge, the trial justice instructed the jury to answer “No ” to the question of the alleged act of adultery by defendant on that occasion “because the evidence of a private detective wholly uncorroborated, not in the slightest degree aided by the evidence of any other wit- ' ness, was insufficient to justify the jury as a matter of law in finding adultery from that evidence alone.” The trial' justice, however, charged the jury that they had the right to take the evidence of the private detective ■ and give it such weight as'ltiey thought it entitled to as showing the relations between the parties bearing upon the main question submitted to the jury as to the act of the defendant on the 10th day of August following, and he enlarged upon the evidence given by the detective with reference to the transaction of the 5th of June.
 

 The same rule was applied by the trial justice as to the
 
 *165
 
 charge against the defendant of the 9 th day of July, which was sought to' be sustained by the evidence of detectives, and he finally charged the jury that the uncorroborated evidence of private detectives was insufficient to justify a verdict for the plaintiff in a divorce action, but slight corroboration was sufficient, that the corroboration must be simply such as to justify the belief that the incriminating testimony given by the detectives is true.
 

 This ruling of the learned trial justice presents the serious question for consideration in this case.
 

 The defendant, in her answer, having denied the charges of adultery made against her, was entitled as matter of right to a trial of the issues by jury, likewise the same privilege extended to. the plaintiff upon bhe counter-charges of adultery made against him by the defendant, which were settled by the order stating the issues to he tried before the jury. (Code of Civil Procedure, section 1757.)
 

 In
 
 Moller
 
 v.
 
 Moller
 
 (115 N. Y. 466) the action was brought by the wife against the husband upon a complaint alleging infidelity with a woman unknown to the plaintiff on the 13th and 28th days of November and the 1st day of December, 1885. The referee' found the defendant had been guilty of adultery on the 28th day of November, 1885, but made no finding as to the other charges specified in the complaint. Upon appeal from the judgment entered upon the report of the referee, after confirmation by the Special Term, the General Term reversed the judgment for the reason that the same was based upon the evidence of a prostitute and detectives and without corroboration. Upon appeal to this court the order of the General Term was reversed and judgment of the Special Term affirmed, this court having determined that the evidence adduced-and characterized by the Special Term was corroborated by witnesses and circumstances.
 

 
 *166
 
 Judge Eajrl, while agreeing with the judges of the General Term of the low estimate of the value in divorce cases of the evidence of prostitutes and private detectives, said:
 

 ‘
 
 ‘
 
 The courts have come to regard the uncorroborated evidence of such witnesses as insufficient to break the bonds of matrimony. * * * The consequences which follow a judgment of divorce are so serious and momentous that such a judgment should not be granted without the evidence which furnished the basis therefor, is, after very careful scrutiny, satisfactory and such as can command the confidence of a careful, prudent and cautious judge. But the illicit amours of faithless husbands and wives are usually clandestine, and their wicked paths are hidden from public observation; and hence courts must not be duped,
 
 and they must take such evidence as the nature of the case permits, circumstantial, direct or positive, and bringing to bear upon it the experiences and observations of life, and thus weighing it with prudence and care, give effect to its just
 
 preponderance.” (p. 468.) ■
 

 In
 
 McCarthy
 
 v.
 
 McCarthy
 
 (143 N. Y. 235) the action was by the wife against the husband to secure an absolute divorce. Judgment was entered in favor .of the plaintiff, affirmed by the General Term and in turn by this court. It was claimed in this court that the judgment condemning the husband ought not to stand, as it rested upon the uncorroborated evidence of prostitutes. This court held that the case disclosed surrounding circumstances sufficient to warrant the finding of the referee as to one charge of adultery, and as to the second charge of adultery that there was sufficient .corroboration in the letters of the defendant addressed to the co-respondent.
 

 In
 
 Winston
 
 v.
 
 Winston
 
 (165 N. Y. 553) the action was brought by the husband against the wife. The defendant in her answer made counter charges of adultery on the part of the husband, evidence of which was given
 
 *167
 
 by three detectives who were employed to watch the plaintiff and to report his conduct, and which was slightly corroborated by the evidence referred to in the opinion in that case.
 

 Judge Gray, in writing in
 
 Winston
 
 v.
 
 Winston,
 
 referred to the cases of
 
 Moller
 
 v.
 
 Moller
 
 and
 
 McCarthy
 
 v.
 
 McCarthy (supra),
 
 and to the language used in the cases referred to he said:
 

 “The rule of those cases, however, is not a rule of evidence, but one for the guidance of the judicial conscience.” Reference was also made in the opinion to the failure of the plaintiff to deny the evidence of the detectives.
 

 In the dissenting opinion of Mr. Justice Kruse of the Appellate Division in this case, in which Mr. Justice Spring concurred, it was stated that the record disclosed slight corroboration of the evidence of Sherwood, and reference was also made to the omission of the plaintiff who had been called as a witness in the action to deny the statements made by the witness Sherwood.
 

 We think the ruling of the trial justice was error. It is a matter of common knowledge that some detectives, as the term is understood, devote time to securing evidence in divorce actions. They may he employed to perform such services for a fixed or contingent compensation, and, if the latter, the amount may be dependent on the success of their labors. The fact that a detective thus employed seeks to establish by his own evidence facts upon which a decree of divorce is sought prompts the courts to look upon such evidence with suspicion, and calls for the exercise of the judicial conscience as to the weight to be given to the same. It does not follow as matter of law that the evidence of a witness who through friendship seeks to render service to a party in a divorce action, and without compensation, is a private detective. While it is not the policy of the courts to favor the severance of the marriage ties, still, as was said by Judge
 
 *168
 
 Earl in the
 
 Moller
 
 case,
 
 “
 
 the illicit amours of faithless husbands and wives are usually clandestine, and their wicked paths are hidden from public observation.” Oases may arise where circumstances point to the guilt of a party, but where evidence of such misconduct is difficult to secure. In such cases, if the facts are discovered through the efforts of one who does so by reason of relationship or friendship for the innocent party, without compensation or the expectation of reward, the testimony of such relative or friend cannot be held valueless as matter of law. The credence to be given to the same is, when the trial is before a jury, a question for the consideration of the jury under proper instructions from the court as the facts developed on the trial may require. As was said by Judge Earl in the
 
 Moller
 
 case, the courts must take such evidence as the nature of the case permits,' and bring to bear upon it the experiences and observations of life, and thus weighing it with prudence and care give effect to its just preponderance'. This language, in connection with the statement of Judge Gray in the
 
 Winston
 
 case that the rule in the cases of
 
 Moller
 
 v.
 
 Moller
 
 and
 
 McCarthy
 
 v.
 
 McCarthy “was not a rule of evidence, hut one for the guidance of the judicial conscience,”
 
 dis: closes that- while this court has justified justices and jurors in looking with suspicion upon the evidence of prostitutes and detectives on different occasions, it has not determined as matter of law that 'such evidence could not be considered by a justice or jury, but rather has declared that in the consideration of the same only such weight should be given to that class of evidence as the conscience of the judge or jurors shall determine the same entitled to receive.
 

 ' In this case a trial by jury was a matter of right, and it was the province of the jury to consider and weigh the evidence of the witness Sherwood under proper instructions from the court, having in mind the failure of plaintiff, who was present at the time and sworn as a witness,
 
 *169
 
 to contradict the evidence of Sherwood. It was not the province of the trial justice to substitute his judicial conscience for the consciences of the jurors. Had the jury, under proper instructions from the court, found a verdict in favor of the defendant and against the plaintiff upon the charges of adultery made against him, it would still be within the province of the trial justice to set aside such verdict as against the weight of evidence and to grant a new trial before another jury.
 
 (McDonald
 
 v.
 
 Metr. Street R. Co.,
 
 167 N. Y. 66.)
 

 Ho exceptions were taken by counsel for defendant to the charge of the court.
 

 As a new trial must be granted the only remaining exception presented by the appellant necessary to be - considered has reference to the action of the trial justice in the exclusion of letters and photographs of a salacious character found in the possession of plaintiff, which were offered on behalf of the defendant for the purpose of presenting to the jury the question as to whether or not a man of such depraved character, as it was claimed this literature demonstrated plaintiff to be, would be likely to be guilty of the offense of adultery. .We think the evidence was remote and improper, and that the trial justice did not commit error in the exclusion of the same.
 

 The judgment should be reversed and a new trial granted, with costs to abide the event.
 

 Willard Bartlett, Oh. J., Werner, Collin, Hornblower and Oardozo, JJ., concur; Cuddeback, J., not voting.
 

 Judgment reversed, etc.