Margarete Matzenauer Fontana, also Known as Margarete Matzenauer Ferrari-Fontana, Respondent, *v.* Edoardo Fontana, also Known as Edoardo Ferrari-Fontana, Appellant.

First Department, May 3, 1918.

**Husband and wife — divorce — adultery established solely by testimony of attorney acting as detective.**

A decree of absolute divorce should not be granted on the uncorroborated testimony of an attorney at law who, forgetting the standards and duties of his profession, accepted a retainer to act as a private detective and followed the defendant to a foreign country to procure evidence of his adultery.

The Appellate Division, unlike the Court of Appeals, is required to weigh the evidence and the force and effect thereof and will not grant an absolute divorce unless the evidence satisfies the judicial conscience of the court.

Appeal by the defendant, Edoardo Fontana, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of September, 1917, upon the decision of the court after a trial at the New York Special Term granting plaintiff an absolute divorce.

An appeal is also taken, as stated in the notice of appeal, from the decision pursuant to which the judgment was entered.

*Nicholas Selvaggi*, for the appellant.

*Carl L. Schurz* of counsel [*William B. Devoe* with him on the brief], for the respondent.

Clarke, P. J.:

There are three allegations of adultery which were attempted to be proven upon the trial. The learned trial justice at Special Term dismissed two of them as being wholly without support from the evidence but upon the third he found the defendant had been guilty of adultery in Rome, Italy.

This finding is based upon the evidence of an attorney at law, practicing in New York city as a member of a partnership. The managing attorney of his firm was the attorney of record for the plaintiff when this suit was brought in September, 1916, and his firm had been retained as counsel in this matter several months before. We desire to say, however, that thereafter other counsel were substituted and appeared upon

the trial and upon this appeal. The first-mentioned attorney went to Rome for the purpose of obtaining evidence against the defendant in this divorce action and was compensated for his services and disbursements abroad. His services in Rome were purely those of a detective, spying upon the defendant and his companions, going so far as to bore two small holes through a connecting door into the room occupied by the defendant and testifying as to what he claimed to have seen through said holes. The learned trial justice stated in his opinion: " These services were rendered by him while he was under retainer from the plaintiff and were subsequently paid for by the plaintiff as being part of the items of service which made up the bill he finally rendered. I hold as a matter of law, therefore, that the services rendered by him in Rome to which he testified on the trial were those of a private detective."

Judge EARL said in *Moller* v. *Moller* (115 N. Y. 466), in speaking of the uncorroborated testimony of a hired detective: " The courts have come to regard the uncorroborated evidence of such witnesses as insufficient to break the bonds of matrimony." The reason for requiring minute scrutiny and corroboration of such testimony is succinctly put in *Blake* v. *Blake* (70 Ill. 618), " When a man sets up as a hired discoverer of supposed delinquencies, when the amount of his pay depends upon the extent of his employment, and the extent of his employment depends upon the discoveries he is able to make, then the man becomes a most dangerous instrument."

It is true that in *Winston* v. *Winston* (165 N. Y. 553) the Court of Appeals said: " The rule of those cases, however, is not a rule of evidence, but one for the guidance of the judicial conscience." And in *Yates* v. *Yates* (211 N. Y. 163), after quoting Judge GRAY's statement in the *Winston* case, the court said: " While this court has justified justices and jurors in looking with suspicion upon the evidence of prostitutes and detectives on different occasions, it has not determined as matter of law that such evidence could not be considered by a justice or jury, but rather has declared that in the consideration of the same only such weight should be given to that class of evidence as the conscience of the judge or jurors shall determine the same entitled to receive."

The jurisdiction of this court differs from that of the Court of Appeals in that we are required to weigh the evidence and the force and effect thereof. The evidence must satisfy our "judicial conscience" as well as that of the trial court. We are of the opinion, upon the examination of this record, that the testimony of this attorney, who has forgotten the standards and duties of an honorable profession and besmirched himself by hiring out as a private detective in a divorce case, is not corroborated as to the main facts necessary to support the judgment. We said in *Hyman* v. *Hyman* (154 App. Div. 469): "It is contrary to the ethics of the profession for an attorney or counsel voluntarily to place himself in a position where it is necessary for him to become a witness in order to establish his client's cause of action or defense."

It should be borne in mind that the defendant took the stand in his own behalf and positively denied all wrongdoing.

We find the testimony insufficient to support the judgment, and, therefore, reverse the same and order a new trial, with costs to abide the event.

Laughlin, Smith, Page and Shearn, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide event.