314

**PITTMAN v. STEPHENS.**

No. 2152.

Court of Civil Appeals of Texas. Eastland.

May 30, 1941.

Rehearing Denied June 27, 1941.

C. O. McMillan, of Stephenville, for appellant.

J. A. Johnson, of Stephenville, for appellee.

GRISSOM, Justice.

Cecil Stephens instituted this suit against Joe Pittman to recover damages resulting from an alleged unlawful assault by Pittman in which Pittman shot Stephens in the chest with a pistol. The defendant, Pittman, answered, among other things, that Stephens made an attack upon him and threatened to kill him and that in shooting plaintiff he acted in self-defense. In an-

swer to issues submitted, the jury found that defendant committed an assault upon plaintiff; that plaintiff sustained injuries; that as a result of the assault plaintiff's damages for medicine and doctor's bills amounted to $115.00; that other damages amounted to $750, and that defendant did not shoot in self-defense. The petition alleged the amount of the bills for medicine and doctors aggregated $110, and, the jury having found said damages to be $115, the plaintiff filed a remittitur of $5.00. Upon said verdict and remittitur, judgment was rendered for plaintiff against defendant in the sum of $860. The defendant has appealed.

By several propositions variously stated, defendant contends the undisputed evidence showed he shot plaintiff in self-defense.

The testimony consisted only of that of the plaintiff Stephens and his daughter, and the doctor who attended plaintiff. The defendant did not testify. Stated briefly, plaintiff's testimony showed that he and his son had been away from home and returned sooner than was expected. That upon his return to his home his wife and two daughters were absent; that he put his boy to bed and then went to the home of his wife's mother and father. He found no one there, but soon thereafter an automobile stopped in front of the house; in the car were the defendant, Pittman, the plaintiff's wife, two daughters, and his wife's mother and father. Plaintiff testified that he went to the car and talked to defendant. He testified:

"I just asked him—I says: 'What do you want to do; you want to marry this woman; or want me to keep her up and you just keep going with her.'

"Q. What did he say? A. He said: 'I am not going with her.'
* * *

"Q. What did you say? A. Well, I said: 'I ought to kill you, and might as well.'

"Q. All right? A. I just walked out towards my car and picked up an old iron about four or five feet long, and just walked back between his car and the house, and the little girl was still between his car and the house and me.
* * *

"Q. How close did you get to him with that iron? A. Twelve or fourteen feet.

"Q. Could you have possibly hit him with that iron? A. Not from where it would have been; no.

"Q. All right, then you say you came back with this iron in your hand, he was sitting in the car? A. Yes sir.

"Q. All right; did you continue to advance on him, or, did you stop; or, what did you do? A. I just stopped, facing the south.

"Q. Towards him? A. No sir; I was just facing the south; he was in the car and across, and I was facing south.

"Q. You had this iron in your hand? A. Yes; in my right hand.

"Q. Did you make any demonstration towards him to use that iron? A. No sir.

"Q. Could you have hit him from where you were? A. No sir.

"Q. Did you undertake to hit him? A. No sir.

"Q. When you got there, you say you stopped, ten or twelve feet, what happened? A. A bullet hit me, right in here.

"Q. In your chest? A. Yes.

"Q. All right—that's all right, just a minute now—you say there was a bullet hit you; who shot that bullet? A. Mr. Pittman.

"Q. All right; what did he say; what did he do when he shot; Cecil, what did you do? A. I got—just dropped that iron, and jumped back, just backed backwards; I whirled to make a get away.

"Q. You dropped the iron and jumped back to get away? A. Yes.

"Q. What happened then? A. Another shot was fired.

"Q. Did you hear Mr. Pittman say anything at the time? A. Yes sir.

"Q. What did he say? A. He says: 'I guess that will hold the S—— of a B——', or 'Son of a Gun'; one of those words, I couldn't say exactly which.

"Q. 'I guess that will hold the S—— of a B——' or 'Son of a Gun'? A. Yes.

"Q. At the time you were shot in the chest, as you say, what became of that iron—that piece of iron? A. I dropped it * * *

"Q. When he shot the second shot did he hit you the second time? A. No sir.

"Q. Repeated those words you just mentioned? A. Yes sir."

■ Without further discussion, we deem it sufficient to say that from the evidence quoted, and other of like import, we conclude it became a question of fact for the determination of a jury whether or not defendant shot the plaintiff in self-defense. We overrule the defendant's propositions based upon the contention that the undisputed evidence shows defendant acted in self-defense.

As a result of shooting plaintiff, the defendant was indicted and convicted of assault with intent to murder with malice. The Court of Criminal Appeals reversed the judgment and remanded the cause for another trial, holding that the uncontroverted evidence showed defendant shot plaintiff in self-defense. See Pittman v. State, Tex.Cr.App., 144 S.W.2d 569. Defendant now contends the decision of the Court of Criminal Appeals is a final adjudication of a fact in issue and conclusive in this case of the question whether defendant shot plaintiff in self-defense.

■ The judgment and opinion in the criminal case were not alleged. If they had been they would not have been admissible to prove the fact contended for. Stephens was not a party to the criminal case. In the criminal case the State was required to prove beyond a reasonable doubt that defendant was guilty as charged. In this case plaintiff was required to prove the essential facts only by a preponderance of the evidence. The rights of the parties to this suit were not concluded by the decision in the criminal case. Landa v. Obert, 78 Tex. 33, 47, 14 S.W. 297; March v. Walker, 48 Tex. 372, 377; Shook v. Peters, 59 Tex. 393, 396; Busby v. State, 51 Tex.Cr.R. 289, 103 S.W. 638, 648; Sumner v. Kinney, Tex. Civ.App., 136 S.W. 1192, 1195; 26 Tex.Jur. 59.

Special issue No. 5 was submitted as follows: "Do you find from a preponderance of the evidence that such injury, or injuries, to the plaintiff, Cecil Stephens, if any you have found, were inflicted by the defendant, Joe Pittman, upon the plaintiff while the said Joe Pittman was not acting in self-defense? Answer: 'The defendant was not acting in self-defense', or 'The defendant was acting in self-defense.'"

In connection with said issue, self-defense was defined as follows: "To aid you in answering the foregoing Special Issue the following definition is given: 'Self-defense' as applicable to this case is defined as: an assault is committed in self-defense when inflicted for the purpose of preventing murder, or the infliction of serious bodily injury, when the assault takes place under the following circumstances; first, it must reasonably appear by the acts or by words coupled with the acts of the plaintiff, that it was the purpose and intent of such person to kill or inflict serious bodily injury upon the defendant; second, the assault must take place while the plaintiff was in the act of committing the offense or after some act done by him showing evidently an intent to commit such an offense."

■ The defendant objected to said issue and the instructions in connection therewith for the reason that "the same constituted a general charge to the jury * * *." In the submission of a case on special issues, a general charge, of course, has no place. Under Art. 2189, Vernon's Ann.Civ.St., the court is authorized to submit such explanations and definitions of legal terms as are necessary to enable the jury to properly pass upon and render a verdict on the issues submitted. The question of whether or not the defendant acted in "self-defense" when he shot the plaintiff had been submitted to the jury. The term "self-defense" has a legal signification and it was proper to define that term. Whether the definition is correct is not questioned. It was a definition of a legal term and was not a general charge. Dallas Ry. & T. Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683, 685.

The defendant contends the court erred in refusing the defendant's requested special issues, as follows:

"Special Issue No. A: Do you find from a preponderance of the evidence herein that at the time of the injury, if any, complained of plaintiff, Cecil Stephens, had not done acts and uttered words which made it reasonably appear to defendant, Joe Pittman, that he was in danger of serious bodily injury? Answer, he had done such acts and uttered such words, or he had not done such acts and had not uttered such words.

"Special Issue No. B: Do you find from a preponderance of the evidence in this case that at the time of the injury, if any, complained of herein that plaintiff, Cecil Stephens, had not uttered words and was not doing acts which made it reasonably to appear to defendant, Joe Pittman, that defendant's life was in danger? Answer, he

was doing such acts and uttering such words, or he was not doing such acts and was not uttering such words.

"Special Issue No. C: Do you find from a preponderance of the evidence in this case that at the time of the injury, if any, complained of herein, plaintiff Cecil Stephens was not attempting to do an act which placed defendant Joe Pittman in danger of serious bodily injury? Answer, he was attempting to do such act or he was not attempting to do such act.

"Special Issue No. D: Do you find from a preponderance of the evidence in this case that at the time of the injury, if any, complained of herein, plaintiff, Cecil Stephens, was not attempting to do an act which placed defendant, Joe Pittman's life in danger? Answer: He was attempting to do such act, or he was not attempting to do such act.

"Special Issue No. E: Do you find from a preponderance of the evidence in this case that plaintiff, Cecil Stephens, at the time of the injury, if any, complained of, was not attempting to take the life of defendant, Joe Pittman? Answer, plaintiff was attempting to take defendant's life or plaintiff was not attempting to take defendant's life.

"Special Issue No. F: Do you find from a preponderance of the evidence in this case that at the time of the injury, if any, complained of herein, plaintiff, Cecil Stephens, was not attempting to inflict serious bodily injuries upon defendant, Joe Pittman? Answer, plaintiff was attempting to inflict serious bodily injuries upon defendant or plaintiff was not attempting to inflict serious bodily injuries upon. defendant."

The defendant's proposition relative to his contention that the court erred in refusing said special issues, is: "A party to a civil case is entitled to have every ultimate fact issue submitted separately to the jury." We agree with this proposition. We do not agree that the court's failure to submit said group of special issues constituted error. The ultimate issue, we think, is whether or not the defendant shot plaintiff in self-defense. Hough v. Grapotte, 127 Tex. 144, 90 S.W. 2d 1090. That issue was submitted.

We think reversible error is not shown by the admission of the testimony of plaintiff's daughter to the effect that the witness and her mother and grandmother and Mr. Biggs and the witness's sister and brother and Mr. Pittman had at sometime (whether on the day of the shooting, or not, is not disclosed by the record) gone on a picnic to a bridge across the Bosque River about five miles from Stephenville, for the purpose of celebrating the witness's grandmother's birthday. If for no other reason, we think the record does not manifest reversible error for the reason that such evidence was in substance before the jury before objection thereto was made to a question inquiring whether or not the witness remembered how long the group stayed on the river at the picnic, at which time the testimony was objected to because it was irrelevant and immaterial and because it did not shed any light on any issue in the case and might be prejudicial to the defendant. No motion to strike said testimony, previously admitted, was made. Traders & Gen. Ins. Co. v. Wright, Tex. Civ.App., 95 S.W.2d 753, 766, affirmed 132 Tex. 172, 123 S.W.2d 314; Texas Coca-Cola Bottling Co. v. Lovejoy, Tex.Civ. App., 138 S.W.2d 254, 258, writ refused.

We have given careful consideration to all of the defendant's contentions. We think reversible error is not shown.

The judgment is affirmed.