**FULLER v. MITCHELL et al.**

No. 14827.

Court of Civil Appeals of Texas.

Dallas.

May 28, 1954.

Rehearing Denied June 25, 1954.

Piranio, Piranio & Fults, Dallas, for appellant.

H. P. Kucera, City Atty., Ted P. Mac-Master, Asst. City Atty., Dallas, for appellees.

YOUNG, Justice.

Appellant here complains of his suspension and dismissal from the Police Department, City of Dallas; naming as defendants in his petition for mandamus to the District Court, members of the Trial Commission, Chief of Police Hansson, City Manager Crull, Mayor Thornton, and named Councilmen. Appellees answered by motion to dismiss and for summary judgment under Rule 166–A, T.R.C.P., with affidavits and voluminous exhibits in support; relator Fuller, in turn, filing affidavits. Upon a hearing, the court found an "absence of genuine issue of any material fact," with summary order entered that relator take nothing by this suit, etc.; which rendition is now presented for review.

The municipality of Dallas (a Home Rule City) has not adopted the contents of Art. 1269m, V.A.C.S., and therefore must rely on its own Charter provisions, inclusive of rules and regulations promulgated by a duly created Civil Service Board, relative to the appointment, employment, re-

moval or suspension of employees in a classified service. For instance, sec. 66 thereof authorizes the organization of a Police Department, under a Chief as Director; sec. 71, that the Chief of Police shall have exclusive right to suspend any officer or Department employee for incompetency, neglect of duty, immorality, drunkenness, failure to obey orders, etc. Sections 114 through 132 provide for the set-up of a Civil Service Board and division of services into classified and unclassified; the creation of a Trial Board to hear appeals made by an employee in the classified service. Pursuant to sec. 117, City Charter, a code of rules and regulations has been adopted by the Civil Service Board, approved by City Council; and with reference to a Trial Commission, outlining the procedure for appeal by an employee from the ruling of a Department head or the City Manager; sec. 121 providing in such connection: "Discharge of Employe After Probation Period.—Any officer or employe in the Classified Service may be removed, suspended, laid off or reduced in grade by the City Manager, in the event the Charter of the City of Dallas should be amended to provide for a City Manager, or the head of the department in which he is employed after the three months' probation period has expired; but, if demanded by such officer or employe, it shall be the duty of the officer discharging him to furnish him a written statement of the reasons therefor and the said discharged or reduced officer or employe shall have the right to demand a public hearing upon said charges within a reasonable time thereafter before the Trial Board, as hereinafter defined." Section 122 reads in part: "The said Board shall have final jurisdiction to hear and decide all appeals made to them by any discharged or reduced officer or employe in the Classified Service, and the judgment or decision of a majority of said Board shall be final." Also, Rule 17, section 2E, provides: "The Trial Board reserves the right to accept as evidence a transcript of testimony or any written evidence or exhibits submitted in a hearing before the City Manager or the director of the department, when same are available, with the understanding that both sides of the case may submit additional evidence."

Background of the instant appeal may be stated briefly: Fuller, a police officer of the City of Dallas, was indefinitely suspended from the Department by Chief Hansson in letter of June 23, 1953; due appeal from this action being made to City Manager Crull, who at a hearing on July 30, 1953, affirmed the Department order by enlargement to permanent suspension and termination of employment. Appellant then requested a further hearing before the Civil Service Trial Board; also an amplification of the charges against him; which amended specifications are attached hereto, marked as Exhibit "A". A Trial Board was duly appointed and on August 31 proceeded to hear the appeal with evidence adduced by the respective parties; transcript of testimony covering pages 47 to 246 of this record, witness index listing 29 individuals. The Board decision in form of a letter to Mr. Fuller, dated Sept. 5, 1953, again affirming the suspension of appellant, is also attached and designated Exhibit "B". This application for writ of mandamus followed, appellant as relator claiming not to have received a fair trial at the Board hearing; that said agency abused its discretion in the consideration of improper evidence, also in permitting the introduction of inadmissible and highly prejudicial matter by way of ex parte affidavits. Then followed the motion of appellees for summary judgment, countered by relator's reply and affidavits.

Prior to a consideration of appellant's charges of error, we feel obliged to take note of the City's plea to the jurisdiction of the District Court to entertain this proceeding, perforce of Charter Section 122 above quoted; providing, as it does, that the judgment of the Civil Service Trial Board shall be "final" with respect to all appeals made to them "by any discharged or reduced officer or employe in the Classified Service * * *." This provision was incorporated into and made part of Section 1, Rule 17, of the Board Regulations, City of Dallas, in 1949. In such connection appel-

lees argue that a court should recognize an inherent right of appeal from the decision of an administrative body *only* when the administrative action complained of violates a constitutional right. In view of City of Amarillo v. Hancock, 150 Tex. 231, 239 S.W.2d 788, we conclude that appellees' said counter point is well taken, and thereby in further support of the City's grant of summary judgment. Our Supreme Court in the case of Hancock has construed the State Civil Service Law of 1947 as amended; more particularly, Art. 1269m, V.A.C.S., providing for an appeal on dismissal or suspension of a Fire Department officer, but not inclusive of a mere *demotion.* The City of Amarillo had adopted this Civil Service law; Hancock subsequently seeking a judicial review of the City Trial Board's action in reducing him from rank of captain to driver; the District Court assuming jurisdiction with trial and judgment in favor of Hancock; affirmed by the Court of Civil Appeals. 233 S.W.2d 339. On grant of writ of error and order of dismissal of cause for want of jurisdiction, the Supreme Court [150 Tex. 231, 239 S.W.2d 790] took occasion to say (emphasis supplied): " * * * Although the legislature specifically denies judicial review, decisions of an administrative body may be attacked in court if they violate some provision of the State or Federal Constitution. Stockwell v. State, 110 Tex. 550, 221 S.W. 932, 12 A.L.R. 1116; Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756. But all other decisions of such an administrative body which do not affect vested property rights or otherwise violate some constitutional provision are valid, and the mere fact that the legislature has denied judicial review does not invalidate them. Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; Texas Highway Comm. v. El Paso Building and Construction Trades Council [149 Tex. 457], 234 S.W.2d 857. The corollary of this proposition is that the courts should recognize an inherent right of appeal from an administrative body created by an act silent on the question of appeal *only* where the administrative action complained of violates a constitutional provi-

sion. Darling Apartment Co. v. Springer, 25 Del.Ch. 420, 22 A.2d 397, 137 A.L.R. 803. * * * So, in order to sustain the jurisdiction of the district court here, plaintiff must bring himself within the protection of the due process clause. To do that, the right affected adversely here by the action of this administrative body must be a vested property right. * * * Clearly plaintiff had no vested property right in his captaincy before the passage of the Civil Service Act in question. Art. 1269m. He could be employed, promoted, demoted, or discharged within the judgment and discretion of his department head. * * * The City of Amarillo may abolish the particular captain's position which plaintiff occupies or all captains' positions, for that matter, or the rank of captain entirely. This being true, a captaincy in the Fire Department of the City of Amarillo under Art. 1269m is not property and the right to it is not a property right protected by due process. Consequently, there is no inherent right to a judicial review of an order of demotion by the Civil Service Commission duly entered after proper procedure. The legislature conferred a benefit in providing that only the Civil Service Commission may demote and in doing so the legislature itself has fixed the limit of the benefit." In Simpson v. City of Houston, Tex.Civ.App., 260 S.W. 2d 94, 97, the Galveston Court ruled similarly in holding: "The statutory rights conferred by Art. 1269m, V.A.T.S., practically guaranteed a tenure of employment for them during good behavior, but such rights are not vested rights. So, where a policeman is dismissed from his employment for statutory cause and his dismissal is sustained by the Commission under the application of the substantial evidence rule, his constitutional rights are not involved." And likewise, Aller v. Detroit Police Department Trial Board, 309 Mich. 382, 15 N.W. 2d 676, 678, holds in part: "The proceeding was administrative and, under the terms of the charter, the finding of fact by the board is final if supported by evidence."

■ From above authorities it would appear, at least to us, that the right to be a police officer is in the nature of a privi-

lege, as opposed to property, involving no constitutional right. "* * * Especially in cases involving a matter of gratuitous benefit or privilege, as distinguished from property rights, may an administrative determination be made final and conclusive without the right to judicial review. * * *." 42 Am.Jur., sec. 188, pp. 558, 559. Here we may take note of the widely circulated remark of Justice Oliver Wendell Holmes in McAuliffe v. Mayor, etc. of City of New Bedford, 155 Mass. 216, 29 N.E. 517, in holding that McAuliffe had no constitutional right to public employment, that: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman."

It follows, therefore, that the instant proceeding is not one necessarily entitled to judicial review.

But if we be mistaken in the foregoing conclusion of law, appellant's three points will be reviewed briefly. They are rather general in effect; first complaining that the court was not authorized on motion for summary judgment to determine questions of fact, in view of his controverting affidavits; the third point asserting error in the court's finding that appellant had been given a full, fair, and impartial trial, because he "was not granted the rights and privileges afforded him by law." These points are more concretely expressed, however, in the following: "(1) That appellant was not afforded a fair and impartial trial, because (a) The Board based its decision upon evidence other than that which was adduced at the trial; (b) the decision of the Board was not supported by the charges brought against appellant. (2) That appellant was not granted the rights and privileges to which he was entitled under the law, because ex parte affidavits were introduced against him over his objection which said affidavits were not predicated as required by law. (3) That appellant refuted the charges against him."

■ The following settled principles are applicable to the points thus raised: (1) That judicial review of an administra-

tive decision is limited to the substantial evidence rule; and the question posed is strictly one of law; State Board of Examiners, etc. v. Marlow, Tex.Civ.App., 257 S.W.2d 761; Simpson v. City of Houston, supra. "The party aggrieved by the administrative decision is not entitled to a trial de novo in court but must assume the burden of satisfying the courts that the administrative decision is illegal, arbitrary, or capricious; that is, that it is not reasonably supported by substantial evidence. (Citing authorities.)" Board of Firemen's Relief & Retirement Fund Trustees, etc. v. Marks, 150 Tex. 433, 242 S.W.2d 181, 183; White v. Bolner, Tex.Civ.App., 223 S.W.2d 686, writ ref. (2) "* * * This procedure is a civil suit. The fact that appellant was acquitted upon the trial of the charge of bribery in a criminal prosecution cannot be urged as conclusive in his favor in this civil procedure, whether as res adjudicata or estoppel by judgment. See Pittman v. Stephens, Tex.Civ.App., 153 S.W.2d 314." Simpson v. City of Houston, supra [260 S.W.2d 97]. (3) "* * * That in cases where a trial court has appellate jurisdiction from the orders of the Civil Service Commission or an administrative agency, the trial court has no authority to substitute his findings for the findings of the Commission, and that such court necessarily would have no authority to put such findings into effect by means of a mandatory injunction. (Citing authorities.)" City of Waco v. Akard, Tex.Civ.App., 252 S.W.2d 496, 500; and (4) if the District Court should go further than an inquiry into the legality and reasonableness of an administrative order, substituting a decree which in its opinion an administrative officer should have entered, such court action would be in excess of its constitutional powers. State Const., Vernon's Ann.St., Art. 2, § 1; Fire Department of City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664.

■ Above points in essence appear to center around the affidavits of two police officers, not necessary to be named; Fuller having made categorical denial of all

charges involving misconduct.[1] These affiants admitted to thefts of merchandise from at least two stores while investigating a suspicion of burglary; which taking of property was either participated in by appellant or was done in his presence. The mentioned affidavits were later repudiated by the same officers as witnesses before the Trial Board; one of them testifying to a restoration of articles, the other refusing to answer on grounds of self-incrimination. In the same connection, City Manager Crull testified that in the hearing before him, both of these unnamed officers admitted to the truthfulness of their affidavits which were considered by him. In view of Rule 17, sec. 2E, appellant's position that said affidavits were not predicated as required by law is deemed untenable. Also without merit is the argument that appellant was found guilty of failing to report acts of theft, whereas in the bill of particulars, the specifications related either to unlawful taking of merchandise or a participation in the theft thereof. His dereliction of duty as found by the Board was merely a lesser phase of the primary offense; consisting of conduct incompatible with a faithful performance of duty to both Police Department and the public. "Law and order can only be maintained in the hands of police officers who are, in the opinion of their superiors, fit and proper persons to administer and enforce the law.

Such responsibility should not be curtailed or circumscribed by insistence upon the application in each instance of technical rules as to admissibility of proof, even though the finding of fact by the board must be 'supported by evidence.' * * * An examination of the record requires the conclusion that each officer was afforded ample opportunity to meet the charges preferred against him, and that there was competent evidence presented in each of the cases * * * to support the conclusion of the trial board that such officer should be dismissed from the force." Aller v. Detroit Police Department Trial Board, supra.

 Our examination of the several points has necessarily included all exhibits and testimony adduced. We have determined therefrom that the Board decision in question is reasonably supported by substantial evidence; and in the same connection we are cited to no testimony tending to show that the order of the Trial Board was the result of capricious or arbitrary action on part of that tribunal. Likewise, the trial court's findings of fact and conclusions of law are adopted in extenso in this opinion of affirmance.[2]

### Exhibit "A"

"(1) That on or about March 10, 1953, you entered the A. Harris & Company Warehouse located at 1409 Federal Street

---

1. A third officer who failed to answer a subpoena for the Board hearing signed a series of confessions placing Fuller at the scene of these thieveries; Capt. Leach, of the Criminal Investigation Division, testifying to a recovery of merchandise so stolen; likewise stating that various articles had been returned by the other officers (two) signing confessions. In our opinion these circumstances, without more, were legally corroborative of all confessions or affidavits in question; appellant admittedly being present at the A. Harris & Company incident. "The corroboration which such evidence (affidavits) should receive must simply be such as to justify a belief that the incriminating testimony given is true." Winston v. Winston, 165 N.Y. 553, 59 N.E. 273, 274; Yates v. Yates, 211 N.Y. 163, 105 N.E. 195; Evans v.

Monaghan, 306 N.Y. 312, 118 N.E.2d 452. (Statement in part of this "third officer," typical of all affidavits above mentioned, is attached hereto, marked Exhibit "C".)

2. Appellant's petition by way of relief prays for writ of mandamus requiring the Trial Board to set aside its judgment against him and to "enter an order reinstating the relator herein as a police officer of the Police Department of the City of Dallas, Texas, and that this Honorable Court further order that the relator be reinstated as a police officer in the Police Department of the City of Dallas, Texas, with the rank of Detective, and to pay the salary of a Detective of the Police Department of the City of Dallas, Texas, to the relator herein from the 21st day of June, A.D.

within the City of Dallas, Texas, presumably answering a burglary alarm, and participated in the theft of clothing, along with other police officers and non-officers, from said Warehouse, and actually received one of the suits of clothing stolen from said Warehouse. (2) That during the month of March, 1953, you entered the Sears & Roebuck Company Store on Jefferson Avenue within the City of Dallas, Texas, in company with other police officers and private individuals, and participated in the theft from the stock of merchandise, along with these other police officers and private individuals, and actually took therefrom certain window drapes, which said window drapes were later found in your home as a result of a search thereof under a Search Warrant. (3) That during the month of March, 1953, you entered the Sears & Roebuck Company Store on Jefferson Avenue within the City of Dallas, Texas, in company with other police officers and private individuals, and participated in the theft from the stock of merchandise, along with these other police officers and private individuals, and actually took therefrom a hat. (4) That you entered the Sears & Roebuck Company on Jefferson Avenue within the City of Dallas, Texas, presumably answering a burglary alarm during the month of March, A.D. 1953, along with another police officer, who entered the store building with you, and saw said police officer take therefrom an electric drill, then and there knowing that he was committing a theft in your presence. (5) That you in company with former Police Lieutentant Gurley and Detective Brannon, during the early part of 1953, approximately during the month of March, participated in the theft of cigarettes and money from a cigarette vending machine, said stolen property being carried out of the building by Lt. Gurley and thereafter being equally divided between the three of you, said building being a Cafe located at 1717 Young Street within the City of Dallas, Texas. (6) That you in the company of former Police Officer Brannon during the month of December 1952, investigated a theft of hams and meats from Hormel & Company, said theft having been committed by employees of the Company, and upon recovery of said stolen property you and Brannon failed to return five (5) hams to the said Hormel Company, of which five (5) hams you kept two and one-half for yourself. (7) That during the month of March 1953, you, along with other police officers, participated in the theft of two cases of whiskey and cigarettes from a whiskey store located at Myrtle and Hatcher Streets within the City of Dallas, of which theft you took for yourself part of the whiskey. (8) That during the month of March 1953, you, along with another police officer, participated in the theft of two (2) fishing reels from the Huey & Philp Warehouse, located at 1900 Griffin Street, within the City of Dallas, Texas, of which fishing reels you kept one for yourself. (9) That you in company with another police officer investigated a theft of cigarettes from various Safeway Stores, located within the City of Dallas, Texas. You recover more than four hundred (400) cartons of cigarettes from J. T. Rushing on Singleton Boulevard within the City of Dallas, Texas. You and your partner, Paul Brannon, failed to return all of the recovered cigarettes to the rightful owner, you keeping for yourself fifteen (15) or more cartons and Brannon keeping fifteen (15) cartons of said cigarettes. (10) That in entering the Sears & Roebuck Company Store Building and the A. Harris & Company Warehouse you knew that the

1953, until the date of reinstatement. * * *." Of course the trial court was without power to award such relief, thereby substituting its judgment for that of the agency on a matter purely administrative; City of Waco v. Akard, supra; Fire Department of the City of Fort Worth v. City of Fort Worth, supra. Moreover, the extraordinary writ of mandamus will not issue to compel the performance of an official act unless a clear legal right thereto is shown; McQuillin, Municipal Corporations, 3rd Ed., Vol. 17, sec. 51.16; King v. Guerra, Tex.Civ.App., 1 S.W.2d 373, writ ref.; and the instant petition would appear as fatally defective in both particulars.

burglary alarm was fake and was pre-arranged by other police officers and confederates. The above specifications of charges are furnished you as requested by you and through your attorney. Very truly yours, C. F. Hansson, Chief of Police."

Exhibit "B"

" * * * The trial Board established by the City Council to hear your application for reinstatement to the police force of the City of Dallas having heard and weighed all of the evidence presented in this case has decided that the Chief of Police was justified in indefinitely suspending you from the force and that the City Manager was justified in affirming this suspension and that your indefinite suspension and dismissal from the police force is hereby upheld and affirmed.

"In taking this action, the Trial Board has not attempted to pass judgment on whether or not your are personally guilty or innocent of an act of theft while acting as a police officer of the City of Dallas. It is our opinion, however, that acts of theft by other members of the police force were committed either in your presence or at times and places where you were present. It is inconceivable to this Board that you could have had no knowledge of such thefts and by failing to report such acts you violated your oath as a police officer, and that for such failure, if for no other ground, you were subject to dismissal from the police force.

"By a copy of this letter to the City Secretary, we are formally entering a decision that you be indefinitely suspended and dismissed from the police force of the City of Dallas effective June 21, 1953."

Exhibit "C"

"Lt. Gurley got into the car assigned to Fuller and I, and the three of us drove around downtown awhile and went by A. Harris Warehouse on Federal, and I believe one of the Smith Detective cars was setting about 50 or 100 feet between the entrance to the A. Harris Warehouse and Akard Street. This guy was sitting at the wheel of the car and we drove on by slowly, and someone said something about this guy being asleep, so we went on up around to Akard and back, to Pacific, to Field, to Federal, and Lt. Gurley said, 'Stop, I will set it anyway', so we drove up almost even with this Smith car and Lt. Gurley got out and went back to the Warehouse and in a few minutes came back to the car, and we drove off, and he said, 'I'm not sure if it's set or not, let's drive off and see if the call comes in or not.' We drove off, and some two, three or four minutes before the call came in, and circled around, and it might have been on Main or Elm, but we did hear the call given to the uniform officers to answer a burglary alarm call at the A. Harris Warehouse and gave an address on Federal Street. We immediately drove back to that address. On arrival, we got out and looked over the front and side of the building as best we could, and a few minutes later, the uniform squad arrived, and shortly after that, the American District Telegraph man, Mr. Stacks arrived. Stacks admitted us to the building with a key, unlocking the door, which gave us access to the stairway to the second floor and came back where the other officers were picking out suits. I did not take a suit. Lt. Gurley picked out a suit, Fuller picked out a suit and one of the uniform officers picked out a suit. Jack Smith and J. B. Munn were the two uniform officers. Then, we all went to the second floor where I located the stock of shirts and found my neck size, which is size 16, and my sleeve length, which is 33. I located shirts of both the correct neck size and sleeve length and I took a box containing four Manhattan shirts, all white. * * *."