Thomas H. REAGAN, Appellant,

v.

George W. BICHSEL et al., Appellees.

No. 12958.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 16, 1955.

Rehearing Denied Dec. 14, 1955.

Joe Burkett, San Antonio, for appellant.

Carlos C. Cadena, City Atty., G. Bert Smith, Jr., Asst. City Atty., San Antonio, for appellee.

POPE, Justice.

Thomas H. Reagan was indefinitely suspended from the San Antonio police force on March 15, 1955. He was charged with (1) acts of incompetency; (2) conduct prejudicial to good order, and (3) violations of the rules and regulations of the police department. After a hearing before the Civil Service Commission of the City of San Antonio, as required by Art. 1269m, Vernon's Ann.Civ.Stats., the first charge was dismissed for lack of proof. The other two charges stated rather fully that Reagan had made certain violent anti-Semitic and anti-Negro statements which were set forth verbatim, and they were both sustained. Reagan appealed to the District Court, where a complete transcript of the Commission hearing was presented to the court on the Commission's motion for summary judgment. The District Court granted the summary judgment because the Commission's order of dismissal was based on substantial evidence. We affirm that judgment.

The second charge, that of conduct prejudicial to good order, is authorized by rules adopted under Section 5, Art. 1269m, and was supported by substantial evidence that Reagan, while off duty, had stated to two newspaper reporters, in substance, that he was a Texas leader of the National Association for the Advancement and Protection of White People, Inc., that Jewish people were plotting against the rest of the people, and that any minister who preached brotherhood and social equality with the

Negroes is following the Communist line. Reagan made himself available in front of the Alamo for an interview by representatives of United Press and Fox Movietone. He there charged that Jews, Negroes and Communists sought an amalgamation of races through inter-marriage, and that certain races and religions sought to overthrow the white race. These are illustrative of the statements that Reagan made to the press, knowing that they were for general publication. He was charged with creating a sentiment of strife and fomenting feelings of racism. He testified that he had personally received threats after the publication. The Commission concluded that he was no longer a suitable policeman.

■ Witnesses testified that Reagan's race attitude is one of antagonism towards segments of the society with whom he must deal as a policeman, that his strong prejudices are hurtful to the morale of the police department, cause divisions within the community, and hamper his capacity to serve the public. All of these matters were disputed and explained, but the trial court, with the full Commission record before it, had only to determine whether the Commission, as fact finder, rendered its decision upon substantial evidence. Fire Department of City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664; Simpson v. City of Houston, Tex.Civ.App., 260 S.W.2d 94.

■ Reagan defended on the grounds that he was entitled to free speech. The issue is not whether a person may make such statements in the exercise of free speech, but whether a policeman may make them in violation of the rules of his employment. When one submits to certain employments and services, he may give up some of his freedoms. A soldier may not debate the orders of his superior. An employee, though free to criticize his employer, must do so with the understanding that his employer is free to disapprove and discharge him, unless some legal rule prohibits that action. Mr. Justice Holmes, many years ago, approved the discharge of a policeman and declared, in McAuliffe v. New Bed-

ford, 155 Mass. 216, 29 N.E. 517: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." See also, Fuller v. Mitchell, Tex.Civ.App., 269 S.W.2d 517, 521.

■ Reagan further defended on the grounds that Section 22 of Article 1269m permits political activities except those expressly prohibited, and that his remarks were not prohibited by the statute. We do not so construe the statute. Section 22, in part, states that policemen "shall not be permitted to take an active part in any political campaign of another for an elective position of the city. The term active part means making political speeches, passing out cards, or other political literature, writing letters, signing petitions, actively and openly soliciting votes and making public derogatory remarks about candidates for such elective positions." Except for the proscription against those activities in connection with the political campaign of another for a municipal elective position, Reagan reasons that he was free to speak, because Section 22, Article 1269m, further states that "no Civil Service Commission or governing body of any city shall further restrict the rights of employees of the Police and Fire Departments to engage in political activities except as herein expressly provided." It is our opinion that the Legislature intended to deny an "active part" as defined, in connection with a political campaign for another in municipal elections, but intended to distinguish municipal elections from all other kinds of elections, such as District, County, State and National, in which the police were free to participate actively. But the Legislature wrote in terms of "political campaign" and "election."

Substantial evidence supports the idea that Reagan made his utterances about race and religion as a Texas representative of a Georgia organization. The mimeographed literature of the organization, by its letterhead, same from "T. H. Reagan, San Antonio, Texas, President," and states, "The sole purpose under the charter of this

organization is, to defend or prosecute any cases in any court, which is necessary, to protect and uphold any or all civil rights pertaining to segregation, and protecting the white race against the aggression of such minority groups as the NAACP" and from other racial groups, especially the Communist Party, which have inspired the destruction of the white race.

Instead of "political" rights, if we are to believe the literature of the organization, it is only "civil" rights of white people with which the organization is concerned. Instead of a campaign or an election, the thing the literature advocates is the sending of $7 to Box 327, Griffin, Georgia, "which will be used to fight for your rights and freedom." Reagan's activities were not within the contemplation of the Legislature in granting freedom in certain political activities.

 The third charge against Reagan was that he violated a Police Department rule which provided: "Officers shall avoid expressing any opinions on political or other questions, the nature of which is controversial. Officers shall refrain from discussing the demerits of any law in public." The violation was proved by substantial evidence, but Reagan urged that the department had never adopted the rule. The Chief of Police testified that the rule was "in force and effect," but Reagan undertook to prove that there was no record of its approval or promulgation. Reagan called as a witness the Director of Personnel for the City of San Antonio. He made a search of his records and they reflected that on two occasions mention was made of certain rules and regulations, but their identity was not reflected by copies attached to the minutes, nor, so far as this record shows, in any other way.

To violate a rule, there must be a rule. Until rules and regulations are made and promulgated, within the statutory framework, there are no rules. City of Sherman v. Arnold, 148 Tex. 516, 226 S.W.2d 620; City of Houston v. Estes, 35 Tex.Civ.App. 99, 79 S.W. 848; 62 C.J.S., Municipal Corporations, § 518. If the departmental rule which Reagan is charged with violating is in force, this record does not show it, and those in charge of the pertinent records could not find it. In our opinion, there was no proof that Reagan should be dismissed for violating the rule mentioned in the third charge.

Since there was substantial evidence that Reagan committed conduct prejudicial to good order, and since that was a law question before the trial court, the summary judgment was proper.

The judgment is affirmed.